SAMUEL WILLIAMS v. RICHARD C. WINDLEY.

*Contract of Master of Vessel—Agent and Principal—Presumptive Evidence.*

A contract made by the master of a vessel for fitting out, victualling and repairing, and which personally binds him, binds the owner also, unless it is clearly shown that the credit is given to the one exclusive of the other. The very nature of the office of master furnishes presumptive evidence, that he is authorized by the owner of the vessel to act for him in such matters, subject to be rebutted by proof to the contrary. Evidence of the actual agency in this case, warranted the jury in finding for the plaintiff.

CIVIL ACTION tried at Fall Term, 1881, of BEAUFORT Superior Court, before *Bennett, J.*

Judgment for plaintiff, appeal by defendant.

*Messrs. J. E. Shepherd* and *C. F. Warren,* for plaintiff.
*Mr. George H. Brown, Jr.,* for defendant.

SMITH, C. J.   The action begun before a justice, and removed by appeal to the superior court, is prosecuted for the recovery of the value of certain goods furnished and money advanced on September 14th, 1880, by direction of one Burrus, master of the vessel named " W. P. Cox," and for

her use while lying at the port of Washington in this state, whereof the defendant was sole owner. The vessel had been under command of this officer for the six months succeeding the defendant's acquirement of title in January, 1879, on wages at the rate of seventy-five dollars per month, and thereafter she was run until her destruction, in March, 1880, under a contract between him and the defendant, upon shares, in which the former agreed to man and victual the ship at his own expense, and pay a moiety of port charges, while the latter was to keep the vessel in repair and pay the other moiety of port charges. This arrangement was not known to the plaintiff, when the supplies were furnished.

The defendant denied his liability for any of the charges for want of authority in Burrus to enter into a contract binding upon him personally, or on account of his ownership of the vessel. Several issues were prepared and submitted to the jury, which, with their responses, are as follows:

1. Were the supplies furnished to the vessel at her home port? Yes.

2. Was the home port the defendant's place of residence, or was he in easy access? No.

3. Was the defendant generally present at the home port, during the stay of the vessel afloat? He was not.

4. Did the plaintiff know that defendant had a general agent in the town of Washington? No.

5. Was Burrus specially authorized to act as the agent of the defendant, in the matter of purchasing supplies at this point? He was.

6. Was the defendant the owner of the vessel? He was.

The defendant proposed to amend by adding to the 4th issue the words " or could he have ascertained the fact by reasonable enquiry?" which was disallowed by the court, and this refusal is the only matter of complaint, shown in the record previous to the rendition of the verdict.

It was in evidence, that the defendant resided twelve miles from Washington, but he was often in the place, and that his vessel was lying, on the day of the delivery of the articles, at a wharf in the rear of the plaintiff's store.

Upon the defendant's application for a new trial, he assigns as the grounds therefor:

1. That there was no evidence to warrant the findings in response to the 2nd, 3rd and 5th issues: and

2. That the 4th issue was insufficient and the finding defective, in the absence of the proposed amendatory words.

Upon the trial of the 5th issue, repeated acts of the defendant were given in evidence in recognition of the authority of Burrus to make contracts for supplies for the vessel, and of his payment for them. This it becomes necessary briefly to refer to and recapitulate.

One Crabtree testified, that Burrus was the agent for the defendant, and as master of the vessel, he, (the witness) had let him have supplies, without direct previous authority of the defendant, for which, except some disputed items, he had afterwards paid.

J. M. Roberts swore that his firm, (Waters & Roberts), had furnished similar goods upon Burrus' application, without being so directed, and they were paid for by defendant.

A third witness stated he had paid a certain sum to a seaman, for his wages; and another, that he had sold tallow— both being upon the order of Burrus, and payment therefor was made by the defendant, who however then directed the latter witness not to credit Burrus further without his direction.

The defendant testified that he never authorized Burrus to procure supplies on his credit; that he had an agent in the town to attend to his business, and that he paid the several creditors: one, because the seaman's wages were a

lien upon the vessel, and the others, for an accommodation only.

"Masters," says Mr. Justice STORY, "are peculiar and special agents, and as incidental to their employment, are ordinarily entrusted with the shipment of officers and crew; of superintending the ordinary outfits, equipments, repairs and other preparations of the vessel for the voyage." Story Agency, § 119.

So remarks another eminent writer: "As the master in general appears to all the world as the agent of the owner, in matters relating to the usual employment of a ship, so does he also in matters relating to the means of employing the ship—the business of fitting out, *victualling*, and manning the ship, being left wholly to his management, in places where the owner does not reside, and has no established agent, and frequently also even in the place of his own residence. *His character and situation furnish presumptive evidence of authority from the owner to act for him in these cases,*" liable indeed, to be refuted by proof that some other person, for the owner, managed the concern in any particular instance, and that the fact was actually known to the particular creditor, or was of such general notoriety that he cannot be supposed to be, because he ought not to have been, ignorant of it." Abb. Ship., 126.

So MASON, J., delivering the opinion of the court of appeals in *Provost* v. *Patchin*, 5 Seld., 235, uses this language: "But as I understand the master's power as agent for the owners in the home port, he may bind them for all reasonable contracts for *fitting out, vitualling*, and repairing the ship, unless it be shown that the owners themselves, or a ship's husband, managed the vessel, and the party contracting with the master was aware of this.

To same effect are *Rich* v. *Cox*, Cowper Rep, 636, and *Farmer* v. *Davis*, 1 Term, 109.

The contract made by the master, and which personally

binds him, binds the owner also, unless it is manifest that the credit was given to the one exclusive of the other, and " so the mere fact, that the repairs are made, or the supplies furnished, either in the home port or in a foreign country at the request of the master, will be sufficient to charge him, but will not discharge the owner, unless such intent is manifest; nor will any private agreement between them as to how these expenses are to be met, or for whose use the ship is to be run, vary the rights of third persons." Story Ag., §§ 294, 296, 297, 298; 2 Pars. Ship, p. 7.

But aside from the presumption raised from the nature of the office of master, and his general control and management of the ship, placed under his command by the owner, it is quite apparent there was evidence of an actual agency in Burrus to contract for necessary supplies for the ship, in the fact that the defendant recognized his obligation to others upon similar contracts, and paid their several demands, without, so far as the case discloses, disclaiming his personal responsibility or the want of power in the master to purchase and obtain the needed articles. From these facts the jury were certainly at liberty to draw the inference of an authority, delegated to the master to procure what was necessary, and to render him responsible therefor.

If the finding of the 5th issue, resting upon the recited testimony is to stand, it disposes of the entire controversy, and renders needless an examination of other exceptions to the ruling upon other matters.

There is no error, and the judgment must be affirmed.

No error.                                     Affirmed.