GEORGE W. HUNTLEY v. H. MATHIAS and others.

*Agency—Principal liable for tort of agent—Evidence— Judge's Charge.*

1. In a suit for damages against the principal for the tort of an agent, the plaintiff alleged, and testified, that he hired a horse to the agent who was traveling about the country selling steam engines, in the interest of his principal (a manufacturing company), and that the horse was injured by misuse and overdriving. The defendant admitted the agency, but asked the court to instruct the jury that there was no evidence the agent had authority from the principal to hire horses, which was refused; *Held*, no error.

2. Such an agency includes the incidental powers necessary to carry out its purpose, and the evidence tended to show that the agent hired the horse in the course of his business, and for the benefit of his principal.

(*Gilbraith* v. *Lineberger*, 69 N. C., 145 ; *Katzenstein* v. *Railroad*, 84 N. C., 688 ; *Bank* v. *Bank*, 75 N. C., 534 ; *Williams* v. *Windley*, 86 N. C., 107 ; *Jones* v. *Glass*, 13 Ired., 305 ; *Cox* v. *Hoffman*, 4 Dev. & Bat., 180, cited and approved).

CIVIL ACTION for damages for injury to a horse, tried at Spring Term, 1883, of ANSON Superior Court, before *Mac-Rae, J.*

It is alleged in the complaint that the defendant Mathias was the agent, and in the employ of, and doing business for, the defendant corporation (The Taylor Manufacturing Company), and that while he was so employed, on or about the 1st day of October, 1881, he, as such agent, hired from the plaintiff a horse, and did " neglect, abuse, overdrive, overload, and greatly damage" said horse. It is further alleged that the defendant corporation so hired the horse, and injured him by such neglect and misuse, that the plaintiff is endamaged to the amount of $75.00.

The defendants admit that the defendant Mathias hired the horse from plaintiff, and that he was in the employ of the defendant corporation, and deny all the other allegations in the complaint.

On the trial, " the plaintiff testified that he hired a horse to defendant H. Mathias on the 1st of October, and that said Mathias was traveling about through the country selling steam engines for the defendant company. He further testified to the hard driving of and consequent injury to the said hired horse by said defendant Mathias, and as to the amount of the damage. There was also other testimony to the injury and damage."

Upon this state of the facts, the defendants prayed the court to instruct the jury that there was no evidence that Mathias had authority from the defendant corporation to hire horses or a horse, and that there was no evidence that the corporation had hired the horse or authorized its hire. The court declined to give this instruction, and the defendants excepted.

The court charged the jury in substance that the liability of the defendant corporation depended upon the character of the agency, and whether the hiring of the horse was under its direction; that plaintiff must satisfy them that by the contract of

agency the agent had authority from his principal to hire horses, and the horse, in the prosecution of the business of the agency, and that if the corporation did so authorize the hiring of the horse, and the agent negligently treated, overdrove, and abused the horse, and he was injured by such treatment, in the course of the business, the defendant corporation would be liable for damages so sustained by the plaintiff. The defendants excepted.

The jury rendered a verdict for the plaintiff and there was judgment accordingly, and the defendants appealed.

*Messrs. Little & Parsons,* and *Haywood & Haywood,* for plaintiff.

*Messrs. J. A. Lockhart* and *S. T. Ashe,* for defendants.

MERRIMON, J. In the absence of any written instrument, agencies in many cases arise from verbal authorizations, from implications, from the nature of the business to be done, or from the general usages of trade and commerce.

It is a general principle, applicable in all such cases, whether the agency be general or special, unless the inference is expressly negatived by some fact or circumstance, that it includes the authority to employ all the usual modes and means of accomplishing the purposes and ends of the agency, and a slight deviation by the agent from the course of his duty will not vitiate his act, if this be immaterial or circumstantial only, and does not, in substance, exceed his power and duty. Such an agency carries with and includes in it, as an incident, all the powers which are necessary, proper, usual and reasonable, as means to effectuate the purposes for which it was created, and it makes no difference, whether the authority is general or special, expressed or implied, it embraces all the appropriate means to accomplish the end to be attained.

The nature and extent of the incidental authority, in such cases, turn often times, upon very nice considerations of actual usage, or implications of law, and it is sometimes difficult to ap

ply the true rule. Incidental powers are generally derived from
the nature and purposes of the particular agency, or from the
particular business or employment, or from the character of the
agent himself. Sometimes the powers are determined by mere
inference of law; in other cases by matters of fact; in others
by inference of fact; and in others still, to determine them be-
comes a question of mixed law and fact. Story, on Agency,
§§85, 97, 100; *Gilbraith* v. *Lineberger*, 69 N. C., 145; *Katzen-
stein* v. *Railroad*, 84 N. C., 688; *Bank* v. *Bank*, 75 N. C.,
534; *Williams* v. *Windley*, 86 N. C., 107; 1 Wait Act. & Def.,
221, 230.

In the case before us the allegations of the complaint are very
general and the evidence is meagre, but applying the rules of
law above stated to the whole case, we think the court properly
held that there was evidence to go to the jury in respect to the
authority of the agent to hire the horse.

It is alleged in the complaint that Mathias was the agent of
the defendant corporation, and this is admitted in the answer,
and the evidence went to show that the object of the agency was,
that the agent should travel about the country from place to
place, and sell steam engines for his principal. Now, common
experience and observation show, that generally, a man, whether
as principal or agent, going about the country from place to
place, and in various directions, to sell steam engines, or mer-
chandise of any kind that people generally purchase, does not
go on foot, but on railroads when he can, on horseback, or in
light, convenient vehicles. This is done almost uniformly, with
a view to expedition as well as the reasonable comfort of the
person traveling. In the general order of things, this is done,
and it is reasonable and proper that it should be. And ordi-
narily, where an agent is sent out on such service, his principal
furnishes the means of transportation. This is not perhaps uni-
formly, but it is genenerally so, and if there is not a legal pre-
sumption of authority in the agent to hire a horse or vehicle for
the purpose of getting from place to place, the fact certainly

raises the ground for an inference of fact to that effect, to be drawn by the jury. The nature of the agency in this case rendered it necessary that the agent should from time to time, have a horse to enable him to get from one place to another, and this gives rise to the inference that his employer gave him authority to hire one.

The corporation defendant sent its agent out to travel from place to place to sell its goods, and it gave him credit as a trustworthy man in and about the business of the agency. In view of the habits of men, the customary course of business, especially the custom in such agencies as that under consideration, there arose the ground for an inference that the jury might properly draw, not conclusive in itself, but to be made and weighed by the jury, to the effect that the agent Mathias had authority to hire the horse for the purpose of his agency. *Katzenstein* v. *Railroad, supra; Bank* v. *Bank, supra; Bentley* v. *Doggett,* 51 Wis., 224; (37 Am. Rep., 827).

That the principal is liable to third persons for torts, deceits, frauds, malfeasance and non-feasance, and omissions of duty of his agent in the course of his employment, cannot be questioned, even though the principal did not authorize, justify, or participate in, or know of such misconduct. Story on Agency, 452, *et seq.; Jones* v. *Glass,* 13 Ired., 305; *Cox* v. *Hoffman,* 4 Dev. & Bat., 180.

The evidence in this case tended to show, and the jury found, that the agent hired the horse in the course of the business of his agency, and for the benefit of his principal, and while he had possession of, and used the horse, in the course of his business, he negligently and carelessly drove him too rapidly, or otherwise maltreated him, whereby he was seriously injured, to the damage of the plaintiff. The court fairly left the question of authority in the agent to hire the horse, and the character and extent of the injury to him, to the jury, and we cannot see that the defendant has any just ground of complaint.

There is no error, and the judgment must be affirmed.

No error. Affirmed.