HAYNOR MANUFACTURING COMPANY v. E. L. DAVIS.

(Filed 1 April, 1908).

1. Principal and Agent—Agency to Sell—Warranty.

Authority to an agent to sell goods is as a general rule authority to bind his principal by warranty.

2. Contracts — Sale of Goods — Implied Warranty — Breach — Latent Defect—Damages.

The selling of an article carries an implied warranty that it is merchantable and can lawfully be sold by the purchaser in his locality if bought for resale; and when the prohibitive quality is latent and could not have reasonably been detected by ordinary observation the seller is liable upon the implied warranty for such damages as were the direct and natural consequence of the breach.

3. Principal and Agent—Representations, Fraudulent—Inducing Sale.

The principal is liable for the fraudulent representations of his agent, general or special, made by the agent in the course of his employment and to induce the sale of his goods, and acted upon.

4. Principal and Agent — Warranty — Verdict Directing — Counterclaim—Nonsuit—Knowledge of Principal.

The salesman of plaintiff sold to defendant certain goods called "Buchu Tonic," representing that it was nonalcoholic and that no license or tax would be required for a sale. and if so his principal would pay it. The principal knew at the time of sale that the de-

fendant was a general merchant at Rocky Mount, N. C., and sub-
sequently shipped the "tonic" to him. The "tonic" contained 32
per cent. alcohol, was highly intoxicating and required the pay-
ment of a license tax, which was duly demanded of defendant.
In an action to recover of defendant the price of the "tonic":
*Held*, (1) that it was error in the court below to direct a verdict
in plaintiff's favor and against defendant's counterclaim for
license tax paid by him; (2) that such was in the nature of a
nonsuit upon the whole evidence as to the counterclaim; (3) that
the knowledge of the agent of the facts and circumstances was
the knowledge of the principal; (4) that by its subsequent ship-
ment the plaintiff was fixed with such knowledge.

ACTION tried before *Neal, J.,* and a jury, at November
Term, 1907, of NASH.

Defendant appealed. The facts are stated in the opinion.

*Jacob Battle* for plaintiff.
*Austin & Grantham* for defendant.

CLARK, C. J. This action was begun before a justice of
the peace to recover the value of goods sold. The defendant
sets up orally a counterclaim, or payment, as follows, which
presents the only question before us: "The defendant denied
that he owed the plaintiff anything and pleaded payment in
full of all accounts, and set up as a reason, among other things,
that the goods for which the account was made was, in part,
'Buchu Tonic,' and that at the time he purchased it from the
plaintiff the plaintiff's salesman, R. D. Guy, had represented
the said 'Buchu Tonic' to the defendant as nonalcoholic and
not subject to any privilege or license tax of any kind, either
Federal or State, and guaranteed the defendant when he pur-
chased the said 'Buchu Tonic' of the said salesman that if
defendant should ever be required to pay any taxes of any
kind for the privilege of selling the same in his store at South
Rocky Mount the plaintiff company would make good to the
defendant any such license tax paid by him; that after having
sold at retail the said 'Buchu Tonic,' relying upon the rep-
resentations and warranties of the said Guy, general salesman

for the said company, he had been called upon and required
to pay a Federal license tax of $37.50 because of the fact that
the said 'Buchu Tonic' was a beverage and highly intoxicating
and contained about 32 per cent. alcohol.    The defendant con-
tends that he is entitled to a credit in this transaction against
the account of plaintiff for the $37.50 paid as a Federal
license tax, and that he, upon being required to pay such tax,
returned to the plaintiff all the 'Buchu Tonic' which he had
on hand, deducted the $37.50 and sent the plaintiff a check
for the excess of the account over and above the $37.50 and
demanded that he be credited with the $37.50."

On the trial in the Superior Court the defendant's testi-
mony was to said purport.    Mr. W. B. Allen, the Pure Food
Chemist for the State, testified that he had analyzed the
"Buchu Tonic" manufactured by plaintiff on several occa-
sions; that it usually ran about 32 per cent. alcohol and was
highly intoxicating, and that a license tax was collectible on
beverages containing one-half of one per cent. alcohol or up-
wards.

At the close of the evidence the court directed a verdict in
favor of the plaintiff for $37.50.    As this is equivalent to a
nonsuit against the defendant upon his counterclaim, it is
irrelevant to consider the evidence in reply introduced by the
plaintiff.    There was no controversy that the defendant owed
plaintiff a balance of $37.50 unless he were entitled to this
counterclaim.

The defendant was entitled to have his counterclaim sub-
mitted to the jury, and if the facts were found in accordance
with his testimony it was a valid counterclaim.

1. There was the express warrant of the plaintiff company
through its agent to sell the goods.    "As a general rule an
agent authorized to sell property, in the absence of express
limitation of his powers, is authorized to bind his principal
by warranty."    30 A. & E., 164.    "An agent authorized
to sell is authorized to make a warranty."    *Alpha Mills v.*

*Engine Co.,* 116 N. C., 802; *Davis v. Burnett,* 49 N. C., 72; *Hunter v. Jameson,* 28 N. C., 252.    Even though such agent exceeds his authority, he binds his principal.    *Lane v. Dudley,* 6 N. C., 119.

2. There was an implied warranty arising because the manufacturer of the article knew that it was alcoholic and subject to tax, and because also this was a latent quality which the defendant could not have detected by ordinary observation.    Without reference to any authority in the agent to make an express warranty, the manufacturer in selling through Guy warranted against latent defects that the article is merchantable and can be lawfully sold by the purchaser if bought for resale.    *McQuaid v. Ross,* 22 L. R. A., note at p. 190 *el seq.; Bierman v. Mills Co.,* 37 L. R. A., 800.

The plaintiff would be responsible for such damages as were the natural and direct consequence of the breach of such warranty.    And what could be more direct than the license tax required by the Government for the shortest period for which license is issued to sell said alcoholic beverage?

3. The plaintiff company is liable for the fraudulent representations of its salesman and agent which were made to defendant to induce the trade and acted upon by defendant to his injury.    This would be so whether the agency of Guy were general or special.    *Hunter v. Matthias,* 90 N. C., 105; *Peebles v. Patapsco Co.,* 77 N. C., 233; 1 A. & E. Enc. (2d Ed.), 1143.    The president of the company testified that when the sale was reported he knew where defendant was and engaged in what business, and he must have known that a general merchant could not sell "highly intoxicating liquor, running usually 32 per cent. alcohol" (for this evidence of the State Chemist must be taken as true on the nonsuit), and subsequently thereto he shipped the "Buchu Tonic" to the defendant.    The company therefore assumed full responsibility for the act of its agent, for the knowledge of the agent that the defendant bought and was induced to buy by

his representations and promise that the company would pay
the license tax if liability therefor was incurred was the
knowledge of the company, and in its subsequent shipment it
was fixed with such knowledge, even though it had not author-
ized the express warranty.   *Lane v. Dudley,* 6 N. C., 119.

   Error.