THE CHURCHILL GRAIN & SEED COMPANY, INCORPORATED, Appellant, *v.* CHARLES E. BUCHMAN, Respondent.

Fourth Department, December 22, 1922.

**Sales — counterclaim to recover loss on goods accepted after expiration of delivery period — salesman has no power to agree that seller will stand loss if buyer will accept and pay for goods.**

A traveling salesman who takes an unconditional order and sends it to his principal, by whom it is accepted in writing, has no implied authority to make a binding agreement that his principal will stand any loss which may accrue by reason of the failure of the principal to make delivery within the time specified in

the contract if the purchaser will take the goods and pay for them, and in the absence of any evidence of custom from which authority may be implied or of express authority on the part of the agent the principal is not bound by the agreement.

APPEAL by the plaintiff, The Churchill Grain & Seed Company, Incorporated, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 29th day of June, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 5th day of August, 1922, denying plaintiff's motion for a new trial made upon the minutes, as resettled by an order entered on the 14th day of August, 1922.

*Thomas C. Burke,* for the appellant.

*Knight & Bentley* [*John Knight* of counsel], for the respondent.

HUBBS, J.:

The plaintiff was engaged in the wholesale grain business. The defendant was a flour and feed dealer. Mr. Gressman was employed by the plaintiff as a traveling salesman and had been so employed for several years before the day in question. In April, 1920, he called on the defendant, as he had been accustomed to do once every month, and sold him one carload of No. 2 white oats at one dollar and fourteen and three-eighths cents per bushel, delivered, to be shipped in June. On June twenty-ninth the defendant telephoned to the plaintiff and was told that the car had not been shipped. He then stated to the plaintiff that if the car was not shipped on June thirtieth to cancel the order. The car was shipped on July eighth and on July twelfth the defendant received from the plaintiff the invoice and certificates of weight and inspection.

On July nineteenth the plaintiff's salesman, Gressman, called on the defendant at his place of business. According to the finding of the jury the defendant asked him what his people proposed to do about the carload of oats shipped after the order had been canceled. Gressman replied that if the defendant would accept and unload the car any loss would be taken care of by the plaintiff rather than to have the car canceled. The car arrived on August 6, 1920, the defendant paid a sight draft for the contract price and unloaded the oats.

This action was to recover the amount of a bill due the plaintiff on another sale of grain. The defendant set up in his answer a counterclaim for the difference in value of the carload of oats which he unloaded and paid for on the 6th of August, 1920, and the amount which he paid the plaintiff therefor, relying on the statement of the agent, Gressman, that the seller would take care

of any loss. The jury found a verdict for the defendant upon the counterclaim.

Gressman testified that he did not have authority to make the agreement which the defendant testified that he did make, and the treasurer of the plaintiff corporation testified to the same effect. The plaintiff takes the position that Mr. Gressman was simply a traveling salesman with power to sell at the prices given to him by the plaintiff and that he was not a general agent.

The exhibits show that the plaintiff acknowledged in writing the order for the carload of oats in question and sent to the defendant the invoice and the certificates of weight and inspection of the car. In so far as the record discloses, the agent Gressman had nothing to do with the sale after he sent the order to the plaintiff except to hold the conversation with the defendant on July nineteenth, in which, it is contended, he agreed that the seller would stand any loss if the defendant would accept and pay for the car. There is no evidence of any custom on the part of the agent and the plaintiff by which the agent was permitted to do more than to take orders for the sale of grain.

The learned trial court submitted to the jury the question of whether or not the agent Gressman had implied authority to make the agreement testified to by the defendant, and the jury, by its verdict, found that he had such authority. The only question here is whether or not that question was properly submitted to the jury.

In 2 Corpus Juris, 607, 608, it is said: " Ordinarily a sales agent is supposed to be employed to contract a sale, and has no implied power, once this is done, either to undo or to modify the contract." Many cases from different jurisdictions are cited. I think that is a correct statement of the law, in the absence of any evidence of custom. Here nothing further appears than that the agent was empowered to sell at prices named by the plaintiff. His statement, made to the defendant long after the order was taken, that the seller would stand the loss if the defendant would take in the car and pay for it, was made entirely without authority, so far as the record discloses, and was not binding on the plaintiff.

In *American Sales Book Co.* v. *Whitaker* (100 Ark. 360; 140 S. W. Rep. 132; 37 L. R. A. [N. S.] 91) the court said: " The agent who solicits orders for or makes sales of goods has no implied power, once the order is executed or the sale made, either to modify or to rescind the contract. As is said in 1 Clark & Skyles Law of Agency, 588: ' It is a well-settled rule that an agent, with authority to sell goods, has no authority, after the contract of sale has been completed or executed, to revoke or rescind the sale and receive back the

goods which he had previously sold, or to alter his contract in any material point.' 2 Mechem on Sales, §§ 1448, 1456; 31 Cyc. 1360. The case at bar was tried by the lower court upon the theory that the appellee had entered into a written contract by which he had made an unconditional purchase of the goods. The agent representing the appellant in making the sale was a traveling salesman; the scope of his authority was only to make such an agreement as was necessary to secure the order for or make the sale of the goods. After the order was executed and the sale completed, his authority ceased, and he could not bind his principal by any act done which was thereafter without the scope of his employment. There is no testimony indicating that this salesman had express authority to cancel or to alter the contract of sale after it was made; and he had no implied authority under the law to do this."

After a traveling salesman takes an unconditional order and sends it to his principal, by whom it is accepted in writing, the salesman has no implied authority to make a binding agreement that his principal will stand any loss which may occur if the purchaser will take the goods and pay for them.

" After once entering into a contract of sale, the powers of the agent are exhausted, and he cannot afterwards cancel it and make another contract for the sale of the same property." (1 Am. & Eng. Ency. of Law [2d ed.], 1005; 31 Cyc. 1360; *Stilwell* v. *Mutual Life Ins. Co.*, 72 N. Y. 385; *Fullerton* v. *McLaughlin*, 70 Hun, 568.)

The legal rule that a principal is responsible for the acts of his agent within the apparent scope of his authority applies only where the principal is responsible for such appearance of authority. (*Edwards* v. *Dooley*, 120 N. Y. 540, 551.)

One dealing with an agent is bound to inquire as to the extent of his authority, and the burden of proof was upon the defendant to establish the authority of the agent to make the agreement that the plaintiff would stand the loss. There was no evidence in the case which justified the submission of that question to the jury.

The judgment and order should be reversed upon the law and the facts and a new trial ordered, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed upon the law and facts and new trial granted, with costs to appellant to abide event.