PISTELL, DEANS & CO., INC., Appellant, v. AARON H. OBLETZ, Respondent.

Fourth Department, May 6, 1931.

*Roy P. Ohlin* and *Mason O. Damon*, for the appellant.

*Howard T. Saperston*, for the respondent.

SEARS, P. J.   The plaintiff is a corporation engaged in the stock brokerage business.   On the 5th day of September, 1929, the defendant gave an order to an employee of the plaintiff named Stoner, to have the plaintiff purchase for the defendant's account 200 shares of a certain stock known as Interbanc Investors, Inc., at the market price and promised to pay plaintiff all sums advanced by the plaintiff in the purchase of this stock, together with interest and also with commissions.   At the time that the order was given the stock of the Interbanc Investors, Inc., had not been issued and it was understood that the purchase was to be conditional on its subsequent issuance.

On the same day the plaintiff made the purchase at $29 a share, making the total purchase price $5,800.   The purchase was made when, as and if issued, in accordance with the defendant's order. A confirmation of the purchase was promptly sent to the defendant. The certificates were issued on or about the 21st day of October, 1929.

Between September eighteenth and twentieth the defendant sold 200 shares of the same stock to Liberty Share Corporation at twenty-six dollars a share, but did not then deliver any certificates to that corporation to complete this sale.

On October twenty-third and thereafter conversations were had between the defendant and Stoner, the purport of which is in dispute.   The defendant testified that on October twenty-third he, having previously notified the plaintiff of his sale of 200 shares of· Interbanc to the Liberty Share Corporation, talked with Stoner by telephone and said to Stoner, " the Liberty Share wants the stock," to which Stoner replied, " all right; I will take care of it."   At that time nothing was said about the difference between the purchase price of the stock, as purchased through the plaintiff, and the sale price of the stock, as sold to the Liberty Share Corporation.

According to defendant, on October twenty-fifth he again talked with Stoner by telephone and said, " Why don't you deliver that stock? " to which Stoner replied, " I can't deliver the stock until you pay the difference between 26 and 29 [purchase and sale price]."   The defendant said, " deliver the stock and send me a bill for the difference and I will pay you for the difference," to which, according to the defendant, Stoner replied, " All right; I will do so."   Every few days thereafter conversations occurred

between the defendant and Stoner, and according to the defendant, Stoner continually promised to take care of the matter.

On November 12, 1929, the defendant caused a certificate for 200 shares of the same stock which he had purchased elsewhere to be delivered to the Liberty Share Corporation in fulfillment of his contract of sale to that company.

On the 14th day of November, 1929, the defendant had a conversation with C. K. Pistell, the vice-president of the plaintiff, in which Pistell asked the defendant, in substance, how it was that the defendant delivered stock to the Liberty Share Corporation through channels other than the plaintiff, and the defendant replied, " I have been asking you to deliver the stock for the last three weeks and I was threatened, unless I did so on November 12th, that someone would have bought it in for me; I had to deliver that stock in order not to be sold out entirely."

Such, in brief, is the account of the transaction as given by the defendant.

On the other hand, Stoner, testifying on behalf of the plaintiff, denied that he had ever promised to deliver the stock to the defendant and bill the defendant for the difference, but on the contrary, said that throughout the conversations which he had with the defendant he insisted on the payment by the defendant of the difference between the purchase and the sale price, as well as the commissions, in all about $680, before making delivery.

It appears, however, that between the 12th and the 15th of November, 1929, the plaintiff did tender to the Liberty Share Corporation the certificates of stock which it had bought for the defendant to apply on the defendant's sale to the Liberty Share Corporation, but that that corporation refused to accept delivery because the defendant's contract with it had otherwise been fulfilled. The witness Stoner explains this tender to the Liberty Share Corporation as follows: " Rather than gamble on losing a thousand or two thousand or more on account of the condition of the market, the officials over there [of the plaintiff] thought it better to take a loss of $700 and get it from Mr. Obletz, or to try to recover it later, than to sell it [the stock] to somebody else at a much cheaper price."

The plaintiff continued to hold the stock until June 17, 1930, when, after a tender to the defendant of the certificates for the stock, with a demand for payment and his refusal to accept them, the stock was sold at $10.25 a share. This tender was made within the period of five days before the sale. The loss, with commissions and interest to the time of trial, amounted to $4,138.56.

The contract between broker and customer as originally made

embodied the agreement by the customer to make payment to the broker when the stock was ready for delivery. The broker was entitled to hold the certificates of stock as security for the purchase price. The relation between the customer and the broker, after the execution of the customer's order, became one of debtor and creditor as to the amount advanced by the broker, and the commissions, and pledgor and pledgee as to the stock itself. (*Content* v. *Banner*, 184 N. Y. 121; *Mullen* v. *Quinlan & Co.*, 195 id. 109; *Gruman* v. *Smith*, 81 id. 25.) The defendant was not entitled to the possession of the stock without the payment of the purchase price. His right was to redeem the stock from the pledge by paying his debt. This being the legal interpretation of the relation of the parties, the defendant claims that there was a modification of the contract on October 23, 1929, by the promise of the plaintiff's salesman, Stoner, to deliver the stock upon the defendant's order upon receipt from the deliveree, of an amount less than the purchase price by about $680, and to bill the defendant for this $680. The arrangement, according to the defendant, was made with a " salesman " and the testimony of the plaintiff's witnesses is to the effect that it was an invariable rule in the plaintiff's business to deliver no securities to customers without receiving payment for them in full.

It is the contention of the plaintiff that the salesman, Stoner, was without authority to make the arrangement on which the defendant relied. (*Churchill Grain & Seed Co., Inc.*, v. *Buchman*, 204 App. Div. 30; *Dudley* v. *Perkins*, 235 N. Y. 448.) Stoner in the transaction was not in any strict sense a salesman. The plaintiff did not sell the stock to the defendant. The arrangement which defendant originally made with Stoner was an employment of the plaintiff as a broker, an employment to act as defendant's agent in making a purchase. Whatever may ordinarily be the authority of a salesman in a stock brokerage house, there was evidence in this case of express authority or ratification — it makes little difference which — in respect to the later arrangement which the defendant claims to have made with Stoner. The tender of the stock by the plaintiff to the Liberty Share Corporation and the conversation which the defendant testified that he had with the plaintiff's vice-president were sufficient basis for a finding by the jury that the plaintiff was bound by the later arrangement made with Stoner, if it was made as testified to by the defendant.

There is an exception, however, arising upon an instruction to the jury which requires a reversal of the judgment. The trial court charged the jury that the verdict in this case must be either in

favor of the plaintiff for the sum of $4,138.56, or in favor of the defendant. The trial justice did not point out clearly what facts had to be found to warrant a verdict in favor of the plaintiff but said, in general, that for the plaintiff to recover a verdict " it is necessary for them [the plaintiff] to satisfy you gentlemen by a fair preponderance of the evidence in this case that the contentions which they [the plaintiff] make are those which should prevail and which should guide you in determining with regard to the result of this litigation." The court then stated the plaintiff's contention to be that Stoner did not promise to deliver the stock without first receiving the full amount which defendant was obligated to pay for the stock and that the defendant's contention was to the contrary. So, in general, the matter was left to the jury in the main charge. The defendant's counsel at the close of the main charge made this request: " I ask the Court to charge the jury that it was the duty of the plaintiff to have sold the stock within a reasonable time after the refusal to accept the tender. The Court: I so charge." The plaintiff's counsel: " I except to your charge that the plaintiff was bound to sell the stock within a reasonable time after the defendant refused to accept it."

In the request there is an ambiguity as to the tender referred to. It may have been the tender to the Liberty Share Corporation made about November 12 to 15, 1929, or the tender to the defendant made during the period from June 12 to June 17, 1930. Whichever was intended, the jury may well have understood from the court's acquiescence in the request, taken in connection with the main charge to the effect that the only verdict permissible was a verdict in favor of the plaintiff for the sum of $4,138.56, the entire loss, or a verdict in favor of the defendant, that a verdict for the defendant could be predicated on a failure of the plaintiff to sell the stock within a reasonable time after the tender to which the jury understood the request to refer. It makes no difference to which tender the request did in fact refer. As to either it states the law erroneously. It is not claimed that the defendant at any time ordered the plaintiff to sell the stock. We need not consider what the rights and obligations would be in case of such an order. (See *Zimmermann* v. *Heil*, 86 Hun, 114; affd., 156 N. Y. 703.) The plaintiff, under the facts in this record, owed no duty to the defendant to sell the stock at any time. The plaintiff's right as a creditor and pledgor, as we have already stated, was to hold the stock until it was paid in full or if it saw fit to realize upon the sale of the stock thus held as security, to sell it after reasonable notice to the defendant. The plaintiff's rights and obligations under the facts in this case had nothing to do with the sale of the

stock within a reasonable time. (*Field* v. *Leavitt*, 37 N. Y. Super. Ct. Rep. [5 J. & S.] 215; *Little* v. *McClain*, 134 App. Div. 197; 43 Harvard Law Rev. 628.) In consequence of this error, the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.