LASH, INC., Plaintiff, *v.* A. C. OGDEN MILK Co., INC., Doing Business as MIDDLETOWN DAIRY COMPANY, Defendant.

City Court of Middletown, Orange County, June 8, 1937.

*Charles Borland,* for the plaintiff.

*Samuel Eager,* for the defendant.

FAULKNER, J. This is an action to recover for certain merchandise sold on April 22, 1936, under the trade name of Lash's Imitation Orangeade Fruit and Flavor Base, which the defendant refused to pay for upon the ground that there was an express warranty that the goods would be fit for the purpose intended, *i. e.,* resale to retail trade, and they were not, because they did not comply with the provisions of the Agriculture and Markets Law.

Several other defenses have been interposed and while their consideration is unnecessary to a determination of the controversy, nevertheless, I decide:

1. That the plaintiff, a foreign corporation, was not required to obtain the certificate licensing it to do business within this State, because while the order was obtained in New York State the goods were shipped from Clifton, N. J., and constituted interstate commerce. (*Eatonton Cotton Mills, Inc.,* v. *Goodyear T. & R. Co.,* 124 Misc. 211; *International Text Book Co.* v. *Tone,* 220 N. Y. 313.)

2. That the regulations issued by the Federal Food and Drug Commission and the Commissioner of Agriculture and Markets are inadmissible, not having been authenticated as provided for by sections 382 and 400, respectively, of the Civil Practice Act.

3. That salesman O'Shea, representing the plaintiff, had no authority to rescind the sale. (*Churchill Grain & Seed Co., Inc.,* v. *Buchman,* 204 App. Div. 30.)

On the trial plaintiff stipulated that there was artificial coloring in the merchandise sold. If the goods when sold complied with the State law, the plaintiff is entitled to recover, and upon this question depends its right to recover the purchase price.

The plaintiff's salesman, Meyers, sustained the defendant's contention of an express warranty, for he admitted that he told the defendant the merchandise complied with the law.

While also unnecessary to the determination of this case, I might observe that were there no express waranty, one would be implied under subdivisions 1 and 2 of section 96 of the Personal Property Law. Merchantability is usually implied. (*Kelvinator Sales Corp.* v. *Quabbin Imp. Co., Inc.,* 234 App. Div. 96.)

4 Williston on Contracts ([Revised ed.] § 997) states the law as follows: " Generally, the requirement of merchantable quality carries with it no implication that the goods shall be salable in a

particular market, but under some circumstances, may include compliance with the requirements of a particular market or adaptability to the immediate use to which the goods are to be put."

The author cites *Mones* v. *Imperial Bottling Works, Inc.* (14 N. J. Misc. 369; 185 A. 483) where a drug was sold which did not satisfy the standards of that State, and *Haynor Mfg. Co.* v. *Davis* (147 N. C. 267; 61 S. E. 54), holding that the implied warranty of merchantability was broken when there was a sale of intoxicants which could not be resold without violating a law.

Section 198 of the Agriculture and Markets Law prohibits the sale of any article of food which is adulterated and subdivision 3 of section 2 brings the merchandise in question within the definition of " food." Section 199 provides that food shall be deemed adulterated if it be mixed or colored in any manner whereby inferiority is concealed.

Plaintiff's salesman admitted on his cross-examination that the product sold did not comply with the law under a regulation issued by the Commissioner of Farms and Markets which according to him became effective on July 1, 1936. But I do not find, however, that the law itself was in any respect changed between the time of the sale and July 1, 1936. The Commissioner may have issued regulations touching the matter but his failure to have done so would not have legalized that which the law itself prohibited. Irrespective of departmental rulings the question still remains whether the merchandise as sold was adulterated as defined by the statute and I am constrained to find that it was so colored as to conceal its inferiority; that the article itself was not genuine, unadulterated orange juice, but a substitute of inferior quality. (See *People* v. *Coney Island Soda Water Co., Inc.*, 142 Misc. 919.)

Under sections 130 and 150 of the Personal Property Law acceptance of the merchandise does not bar an action for damages. The purchaser may do as he has in this case, accept the goods and set up against the seller the breach of warranty by way of recoupment in extinction of the price.

Judgment is awarded the defendant dismissing the complaint.