THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ANNA LIPOFF, Defendant.

City Magistrate's Court of New York, Rockaway Court, Borough of Queens, December 9, 1943.

*Charles P. Sullivan, District Attorney (William B. Blake* of counsel), for plaintiff.

*Louis M. Bornstein* for defendant.

PINTO, C. M. In each of the two complaints before the court, the defendant is charged with violating an order of the New York State War Council in that she sold certain kosher meats above the ceiling prices established by the United States Office of Price Administration.

The State War Council came into being by chapter 445 of the Laws of 1942, as amended by chapter 544 of the Laws of 1942 (New York State War Emergency Act). Under subdivision 6 of section 7 of that statute, it is empowered to adopt and promulgate any rationing, freezing, price-fixing, or other orders

imposed by authority of the Federal Government and to establish rules for their enforcement in this State.

On April 28, 1943, by Resolution No. 294 of the State War Council, all of the O. P. A. ceiling price regulations were adopted *in toto* and promulgated. For the purpose of enforcing said Federal orders, the resolution further provided that every violation of such regulations would constitute an infraction of an order of the New York State War Emergency Act. (Official Bulletin of New York State War Council, May 8, 1943, Vol. 2, No. 20, p. 222.)

The only proof submitted as to the ceiling prices was a printed circular characterized by the complainant as a copy of the O. P. A. price regulations. This paper was marked in evidence with the reservation that defendant might move to strike out at the end of the People's case. In pressing such a motion the defendant urges that the best evidence of such regulations would be the original or a certified copy thereof.

The objection seems to be well taken. (See Civ. Prac. Act, §§ 382, 400.) In *Lash, Inc.,* v. *Ogden Milk Co.* (163 Misc. 407), regulations of the Federal Food and Drug Commission and of the Commissioner of Agriculture and Markets were held inadmissible unless authenticated as provided by the above-cited sections of the Civil Practice Act.

Under the circumstances, the inquiry that naturally suggests itself is whether the court may take judicial notice of the O. P. A. orders. In *Matter of Rosenberg* (208 App. Div. 707), the court took judicial cognizance of certain regulations of the Federal Government established by executive orders relating to income tax matters. There was a similar holding in *Ingersoll-Rand Co.* v. *U. S. Shipping Board Emergency Fleet Corp.* (195 App. Div. 838), wherein the Public Acts of Congress and the Executive Orders of the President of the United States, issued pursuant thereto, were involved.

In a recent survey made by our Judicial Council, it was disclosed that the courts of New York have, with some few exceptions, demanded formal proof of the laws of sister States and the orders of administrative boards. This, in their opinion, is an antiquated rule which has resulted in considerable confusion, inequity, and unnecessary delay and expense. The Council recommended that "all matters of law" be uniformly subjected to a rule of discretionary judicial notice. (9th Annual Report of New York Judicial Council, 1943, pp. 271–303.)

Guided by this report, the 1943 Legislature enacted section 344-a of the Civil Practice Act (L. 1943, ch. 536, eff. Sept. 1,

1943), which provides that any trial or appellate court may, in its discretion, take judicial notice of certain matters of law. Paragraph 5 of subdivision A thereof reads as follows: " A rule or regulation of an executive department of the government of the United States, or a public board, agency or officer created by the law thereof."

By the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*), the Congress of the United States sought, in the interests of national defense and for the successful prosecution of the present war, to check speculative and excessive prices. To accomplish this purpose, the Act sets up the Office of Price Administration, which is empowered to establish regulations and orders, whenever in its judgment the prices of commodities rise, or threaten to rise, to an extent inconsistent with the intent and purposes of that Act, by fixing maximum prices such as in its opinion will be fair and equitable.

The language of section 344-a of the Civil Practice Act, which has been already quoted, clearly includes the regulations issued by the Federal Price Administrator.

The courts of this State are further empowered by paragraph 4 of subdivision A of section 344-a to take judicial notice, in their discretion, of " A rule or regulation of an executive department, public board, agency or officer of this state ".

Under the resolution of the State War Council, previously noted, all the O. P. A. price-fixing regulations became orders of the War Council, which body is without doubt a State agency.

The rules of evidence in the Civil Practice Act apply in criminal cases except where otherwise especially provided for in the Code of Criminal Procedure. (Code Crim. Pro. § 392; see, also, *People* v. *Kohlmeyer,* 284 N. Y. 366, 368.)

Trials in the Magistrates' Courts are governed by the usual rules of evidence. (Cobb, Inferior Criminal Courts Act, p. 193.)

There does not appear any cogent reason for insisting on technical or formal proof of the O. P. A. regulations. On the contrary, the courts should take judicial notice of such orders in the interest of a speedy and economical administration of price-fixing standards. If our State is to render effective aid to the Federal Government in its laudable efforts to check excessive prices and thus stem the tide towards inflation, its legal machinery and procedure must be prepared to dispose of this type of litigation expeditiously and with a minimum of expense.

It is a matter of common knowledge that many merchants dealing in food products and other commodities vital to the

well-being of the citizens of the home front are violating the price regulations. Mr. Wooley, Regional Administrator of the O. P. A., in a public statement issued yesterday, estimated that 43% of the food in this city is being sold above ceiling prices.

As a consequence of this condition, the New York City Department of Markets and the Sheriff of New York City are serving a large number of summonses on these profiteers. Many hundreds of these cases are being tried daily in the Magistrates' Courts of the city. Obviously, if it becomes necessary to obtain certified or authenticated copies of such price regulations in these prosecutions, delay will ensue and their purpose will be frustrated. Then, too, the municipal authorities should not be burdened with the cost of securing such orders, which have already received wide publicity through the O. P. A., by State and municipal agencies, the newspapers, magazines, and on the radio. In addition, they have been filed with the Division of the Federal Register in accordance with the provisions of the Emergency Price Control Act of 1942. (U. S. Code, tit. 50, Appendix, § 926; tit. 44, § 307.)

We are confronted with the greatest national emergency in the history of this country and our courts must be ready, as every other agency of government, to meet that challenge. We cannot hope to save our economic system, or take the risk of jeopardizing our military successes abroad, by cleaving to obsolete and antequated legal theories. To function effectively in this day, the courts must adopt and apply modern and common sense rules.

For these reasons this court will exercise the discretion conferred by the provisions of section 344-a of the Civil Practice Act. Accordingly, the court is taking judicial notice of the O. P. A. regulations herein involved which, by its own research, are found in Maximum Price Regulation No. 394, Amendment 2, issued by the O. P. A. Administrator on June 7, 1943, effective June 21, 1943, and filed in the Division of Federal Register on June 9, 1943 (8 Fed. Reg. pp. 7692–7706).

The ceiling prices of the meats specified in the two complaints for Zone 9-North, which includes New York City, are plainly set forth in the aforementioned regulations and are in accordance with the allegations of the complaints.

There remains the question whether the People have adduced sufficient evidence to make out a *prima facie* case. The complaints allege that the defendant did unlawfully " offer to sell, sell and deliver," but the proof disclosed merely an offer to

sell. There was no actual delivery to the customer who was an inspectress of the Department of Markets. The defendant quoted the prices to her, weighed the meats, and then wrote down the sale prices on a paper bag; whereupon, without tendering payment or demanding delivery, the complainant identified herself and served a summons.

The defendant contends that failure to prove every element of the transaction set forth in the complaint, namely, an offer to sell, a sale and a delivery, is fatal. The court entertains a different view. Proof of an offer to sell is sufficient. The allegations of a consummated sale and delivery may be disregarded as surplusage. The situation here is not analogous to that disclosed in *People* v. *Goldberg* (146 App. Div. 950), cited by defendant, which was a prosecution for defrauding a purchaser in the sale of merchandise. The Congressional Emergency Price Control Act of 1942 provides the proper guide to follow in prosecutions for violation of the Federal price-fixing regulations. A sale is defined in that Act in the following language. [Act, § 302, subd. (a); U. S. Code, tit. 50, Appendix, § 942]: " The term ' sale ' includes sales, dispositions, exchanges, leases, and other transfers, and contracts and *offers to do any of the foregoing.* The terms ' sell ', ' selling ', ' seller ', ' buy ', and ' buyer ', shall be construed accordingly." (Italics supplied.)

In section 4 [U. S. Code, tit. 50, Appendix, § 904, subd. (a)] we find this prohibition: " It shall be unlawful  *  *  *  for any person to sell or deliver any commodity  *  *  *  or otherwise to do or omit to do any act, in violation of any regulation or order under section 2 (section 902 of this appendix), or of any price schedules effective in accordance with the provisions of section 206 (section 926 of this appendix), or of any regulation, order, or requirement under section 202(b) or section 205(f) (sections 922(b) or 925(f) of this appendix) ", and then continuing immediately: " or to offer, solicit, attempt, or agree to do any of the foregoing."

The intent of Congress is clear. It sought to curb not only actual sales at excessive prices, but also all efforts in that direction. Accordingly, the statute condemns and prohibits an attempt to sell, an offer to sell, and even the solicitation of a sale, at prices over the maximum prices established by the O. P. A.

The court is satisfied that the evidence is sufficient to establish a *prima facie* case involving the sale of kosher beef liver, and defendant's motion to dismiss is denied.

As to the second charge, the complainant's testimony was unsatisfactory. She exhibited little knowledge of the characteristics, grade and cut of the particular veal in question. The evidence is insufficient and that complaint is dismissed.