THE UNITYPE COMPANY *v.* ASHCRAFT BROTHERS.

(Filed 26 April, 1911.)

1. **Vendor and Vendee — Contracts — Fraud—Declarations—Inducements—False Representations.**

    While expressions of opinion by a seller, amounting to nothing more than mere commendation of his goods, such as extravagant statements as to value, etc., are not, as a rule, to be regarded as fraudulent in law, yet when assurances of value are seriously made and are intended and accepted and reasonably relied upon as statements of fact, inducing a contract, they may be considered in determining whether there has been fraud perpetrated.

2. **Same—Questions for Jury.**

    Where there are declarations of value of goods made by the seller, though made in the form of opinions, and there is doubt as to whether they were intended and received as mere expressions of opinion or as statements of facts to be regarded as material, the question must be submitted to the jury.

3. **Same—Knowledge Implied.**

    To create a right of action for deceit in a sale, there must be a statement made by the seller or by one for whom the defendant is answerable, which is untrue in fact, and is known by the

person making it to be untrue, or he is culpably ignorant—*i. e.*, does not know whether it is true or false, and made with the intent that the plaintiff shall act upon it or in a way reasonably calculated to mislead him, and he does act in reliance upon the statement and in the manner contemplated or reasonably probable, and damage to the lawyer must result therefrom.

### 4. Same—Unequal Opportunity.

A false representation of the value of goods made by the seller is actionable which materially affects the transaction, when the facts are peculiarly within the knowledge of the seller, and in respect to them the other party, in the exercise of the proper care, had not a fair opportunity of ascertaining the truth.

### 5. Inventor.

When the inventor of a typesetting machine, who is the agent of the manufacturers to sell the same, makes false representation as to its mechanical construction and its quality or value, they are presumed to have been knowingly made, and being well calculated to deceive the vendor will be bound by them if the seller is induced thereby to act to his preference.

### 6. Contracts—False Representations—Fraud—Parol Evidence.

Pertinent evidence tending to show fraudulent representations sufficient to invalidate a contract of sale cannot be objectionable on the ground that the contract cannot be contradicted or varied by parol, as in law, it does not have that effect. The contract is cancelled and not varied. *Etheridge v. Palin*, 72 N. C., 216, cited and distinguished.

### 7. Vendor and Vendee — False Representations — Principal and Agent—Evidence—Declaration of Agent—Proof Aliunde.

False representations made by an agent sent to negotiate a sale and made as an inducement thereto are binding upon the principal, and an objection that the agency was not shown *aliunde* the acts and declarations of the agent is not tenable when it appears that the agent was acting for the principal, who recognized his authority and claims the benefit of the transaction after acknowledging his acts and declarations.

CLARK, C. J., concurring; ALLEN, J., did not sit.

APPEAL from *W. R. Allen, J.,* at the November Term, 1910, of UNION.

This action was brought to recover the amount of eight notes, each for $25, given in part payment of the purchase price ($1,750) promised by the defendants to be paid to plaintiff for

a Simplex Typesetting Machine, No. 2. C. H. Lombard, an expert machinist and inventor of this machine, was sent by the plaintiffs to close the contract with the defendants, who were printers and publishers of a newspaper at Monroe, N. C. He represented to them, as defendants allege and there was evidence to prove: "1. That Simplex No. 2 was an improvement on Simplex No. 1, and did not have its imperfections, because of which No. 1 had proved to be a failure and had been taken off the market by the plaintiff. 2. That it was so constructed as not to break type in setting or distributing same. 3. That with the assistance of two men it would set from five to six thousand ems per hour, or three times as much as hand composition, and with the same economy as hand composition. 4. That said machine was so constructed that the life of the type used in it was the same as when used in hand composition." Defendants further alleged and introduced evidence to prove that the representations, each and all of them, were knowingly false and were fraudulently made with the intent and purpose to induce the defendants to buy the machine, and that they were misled thereby, while in the exercise of due care and judgment on their part, and induced to buy the machine; that it was impossible to discover the falsity of the representations and the radical defects in the machine, save by the long use of the same, and that the machine was so defective as to cause them great loss and damage, and that plaintiff, by reason of the fraud and damage, was not entitled to recover any part of his alleged claim. Issues were submitted to the jury which, with the answers thereto, are as follows: 1. Did the defendants execute the contract introduced in evidence? Answer: Yes. 2. Did defendants execute the notes introduced in evidence? Answer: Yes. 3. Did the plaintiff represent and warrant to the defendants that the machine sold to them was an improvement on machine No. 1; that it would not break type and that type could be used with it as economically as by hand? Answer: Yes. 4. If so, was such representation and warrant false? Answer: Yes. 5. If so, did the plaintiff know it was false? Answer: Yes. 6. If so, did defendants rely thereon and were they induced thereby to execute said notes and con-

tracts? Answer: Yes. 7. If so, what damage, if any, have defendants sustained thereby? Answer: Eleven hundred dollars, with interest from date of notes. Judgment was entered upon the verdict that the defendants go without day and recover their costs. Plaintiff, having entered exceptions to the rulings of the court, appealed to this Court.

*Redwine & Sikes for plaintiff.*

*Williams, Lemmond & Love and Adams & Armfield for defendant.*

WALKER, J. There have recently been several cases of this kind before the Court, and we have held that while expressions of opinion by a seller, amounting to nothing more than mere commendation of his goods—puffing his wares, as it is sometimes called—or extravagant statements as to value or quality or prospects, are not, as a rule, to be regarded as fraudulent in law, yet "when assurances of value are seriously made, and are intended and accepted and reasonably relied upon as statements of fact, inducing a contract, they may be so considered in determining whether there has been a fraud perpetrated; and though the declarations may be clothed in the form of opinions or estimates, when there is doubt as to whether they were intended and received as mere expressions of opinion or as statements of facts to be regarded as material, the question must be submitted to the jury." 14 A. & E., page 35; 20 Cyc., page 124; *Morse et al. v. Shaw,* 124 Mass., 59; *Whitehurst v. Insurance Co.,* 149 N. C., 273; *Cash Register Co. v. Townsend,* 137 N. C., 652. We also held in the *Whitehurst case,* approving what is said upon the subject in Pollock on Torts (7 Ed.), 276, that to create a right of action for deceit, there must be a statement made by the defendant, or for which he is answerable as principal, and with regard to that statement all the following conditions must concur: (a) It is untrue in fact. (b) The person making the statement, or the person responsible for it, either knows it to be untrue or is culpably ignorant (that is, recklessly and consciously ignorant) whether it be true or not. (c) It is made with the intent that the plaintiff shall act upon it, or in a manner apparently fitted to induce him to act upon it. (d) The

plaintiff does act in reliance on the statement in the manner contemplated or manifestly probable, and thereby suffers damage. What is still more to the point, we further held that the false representation of a fact which materially affects the value of the contract and which is peculiarly within the knowledge of the person making it, and in respect to which the other party, in the exercise of proper vigilance, had not an equal opportunity of ascertaining the truth, is fraudulent. Thus false and misleading representations made by a vendor to a purchaser of matters within his own peculiar knowledge, whereby the purchaser is injured, are a fraud which is actionable. Where facts are not equally known to both sides, a statement of opinion by one who knows the facts best involves very often a statement of a material fact, for he, impliedly, states that he knows facts which justify his opinion. Smith on the Law of Fraud, sec. 3; *Modlin v. R. R.,* 145 N. C., 218; *Ramsey v. Wallace,* 100 N. C., 75; *Cooper v. Schlesinger,* 111 U. S., 148; Kerr on Fraud and Mistake, p. 68. The principles relating to this question are so fully and clearly stated by *Justice Hoke* in *Whitehurst v. Insurance Company, supra,* and so applicable to the facts of this case in its every phase, that no other authority would seem necessary to sustain the ruling of the Court upon the question of fraud. It appears in this case that the false statements were made by the inventor of the machine, who must be supposed to have been fully informed as to its good and bad qualities and who must, therefore, have made the representations knowing them to be false. It was so expressly held in *Peebles v. Guano Co.,* 77 N. C., 233. The plaintiff in this case is a corporation and the manufacturer of the machine, and therefore what is said in the *Peebles case* is clearly pertinent to the facts as presented in the record: "It is said that the jury have not found that the representations were fraudulent, but only that they were false, and without fraud, the action cannot be maintained. If we consider the action as for the deceit, this objection would be unanswerable if the defendant was the seller only, and not also the manufacturer of the article. It is difficult to conceive how a manufacturer of guano can make a representation concerning the substances of which it is composed, which is false, and not also

fraudulent, in the sense that it was knowingly false. If his servants employed in the manufacture, on any occasion by negligence, or wilfully, omitted to put in the valuable ingredients without the knowledge or connivance of the manufacturer, it would free his false representation from immorality, but he must in law be held equally liable for the acts of his servants, and he cannot be held innocent of a moral fraud, if after being informed of the omission he seeks to take advantage of it by demanding for a spurious and worthless article the price of the genuine one. We think that on the facts found by the jury the plaintiff was entitled to damages." The representation which Lombard, plaintiff's agent, made to defendants was of such a nature as to mislead them and induce them to purchase a worthless machine instead of the improved and perfect one they had the right to think was being sold to them. It was well adapted to accomplish the purpose for which it was made, namely, to deceive the defendants as to the true quality of the machine. He lauded its merits, if it had any, but wilfully concealed its demerits, and having no knowledge or means of acquiring knowledge themselves, they were easily duped, as any intelligent and careful man would have been, and were practically at his mercy. The representation was substantially like that made in *Audit Co. v. Taylor,* 152 N. C., 272, which we held to be sufficient as the basis for a charge of deceit. The representation in our case was as to the mechanical construction of the typesetter, and it proved by actual use to be mechanically defective. It was not a mere expression of opinion or commendation, but the false statement of a hidden or concealed fact, which was material because it was the main inducement to the purchase. *Machine Co. v. Feezer,* 152 N. C., 516; *Savings Bank v. Chase,* 151 N. C., 108.

The plaintiff contends that the evidence tended to vary or contradict the written contract of sale, and relies upon *Etheridge v. Palin,* 72 N. C., 216, but the case does not apply here. It was attempted in *Etheridge v. Palin* to vary the contract by adding a warranty, but that is very different from an attack upon the contract as having no validity because induced by fraud. It does not change the contract, but nullifies it, and is competent

for that purpose, as we held in *Tyson v. Jones,* 150 N. C., 181; *Whitehurst v. Insurance Co., supra.*

The exception that there was no evidence of the agency of Lombard other than his own acts and declarations, is not meritorious. He was sent out by the plaintiffs to make the contract and install the machine, and there was other competent and sufficient evidence of his agency. The declarations were made by him *dum fervet opus,* and his principle must be considered as bound by them, as much so as if it could have made them and had made them itself. *Qui facit per alium facit per se.* In this connection we may revert to the case of *Peebles v. Guano Co., supra,* where it is said: "There is no reason that occurs to us why a different rule should be applicable to cases of deceit from what applies to other torts. A corporation can only act through its agents, and must be responsible for their acts. It is of the greatest public importance that it should be so. If a manufacturing and trading corporation is not responsible for the false and fraudulent representations of its agents, those who deal with it will be practically without redress and the corporation can commit fraud with impunity." In *Manufacturing Co. v. Davis,* 147 N. C., 267, the present *Chief Justice* says: "The plaintiff company is liable for the fraudulent representations of its salesman and agent, which were made to defendant to his injury. This would be so whether the agency of Guy were general or special. *Hunter v. Matthias,* 90 N. C., 105; *Peebles v. Patapsco Co.,* 77 N. C., 233; 1 A. & E. Enc. (2d Ed.), 1143." See also *Savings Bank v. Chase, supra.*

Whether the machine was in fact defective, as alleged by the defendants, was a question for the jury, and so were the other matters involved in the issues. We think the delay of defendants in discovering the defect and the fraud, and in asserting their rights in respect of it, is sufficiently explained by the proof. There was evidence to support the verdict of the jury, and we are not privileged to review their findings. The judgment thereon was correct. *McClennahan v. Cotten,* 83 N. C., 333.

Upon a careful review of the whole case, no error has been discovered.          No error.

ALLEN, J., did not sit.

CLARK, C. J., concurring.  There was no error in this appeal which was by the plaintiff.  This was an action begun before a justice of the peace upon eight notes for $25 each, being part of the purchase price ($1,750) for a typesetting machine.  On the trial in the Superior Court, on appeal, the defendant's counter-claim for damages on account of false representations and breach of warranty in the sale was fully investigated and the jury found that the defendant was entitled to recover therefor the sum of $1,100 and interest from the day of sale.  By reason of several decisions of this Court the defendant could not recover judgment for the difference, $900 and interest thereon.  Yet, if the jury had the right to consider the alleged counterclaim and upon the conflicting evidence and under the charge of the court, to find that the plaintiff was indebted to the defendant in the sum of $1,100, it is surely illogical to hold that the court could not render judgment for the amount which the jury were author-ized to find that the plaintiff owed the defendant.  The judge had jurisdiction upon the trial and investigation up to and including the reception of the verdict.  By what process of reasoning did his jurisdiction stop there?  Besides, it will be an inconvenience, and often lead to a denial of justice, if the defendant, as in this case, must practically remit all of his counterclaim above the amount which he owes the plaintiff.  In this case should the plaintiff sue upon his other notes for the balance of the purchase money, the defendant will be debarred from using the other $900 of his counterclaim against such notes.

It is true that we have decisions to that effect.  But they are not bottomed on the reason of the thing, and the court should not hesitate to overrule them.  The courts are very slow, and justly so, to overrule a decision, however erroneous, when it has become a rule of property.  But this is merely a question of practice and procedure.  It is true also that it has been held that this is a question of jurisdiction, and therefore settled by the Constitution.  But clearly this is not so.  The Constitution does prescribe that the justice of the peace has jurisdiction as to contracts only when the principal sum does not exceed $200.  But when the case has been carried by appeal into the Superior

Court, it is no longer a question of the jurisdiction of the justice of the peace, but of the jurisdiction of the Superior Court.

When the Superior Court becomes seized of jurisdiction of a case it has it fully, with full power of amendment, in all cases. It can make no difference whether the case has been brought into the Superior Court by the service of summons, or by appeal from the clerk, or by appeal from a justice of the peace. The summons is nothing but a notice to appear in the Superior Court. The notice of appeal from the clerk or from the justice of the peace has exactly the same effect. By either process, the Superior Court is vested with the same jurisdiction.

If the defendant had been brought into court by a summons upon a contract for $201, the court could permit an amendment making it any other amount. The same power of amendment exists in all cases, because the jurisdiction of the Superior Court confers the same powers upon the judge, even though the case is brought into its jurisdiction by appeal from the clerk or a justice of the peace. Preconceived opinions and former decisions being set aside, there is nothing in the Constitution which denies power to the judge to enter up judgment for any amount which the jury, under his instructions, has legally found to be due. The decisions to the contrary should be disregarded.

There was formerly the same inconvenience and difficulty on appeals from the clerk to the Superior Court. But this has now been cured by the Act of 1887, now Revisal, 614, which provides, "Whenever any civil action or special proceedings begun before the clerk of any Superior Court shall be, for any ground whatever, sent to the Superior Court, before the judge, the judge shall have jurisdiction," and authorizes him "to hear and determine all matters in controversy in such action." The decisions hold that the judge may make any amendment whatever, and that this is so even though the proceeding before the clerk was a nullity. *In re Anderson,* 132 N. C., 243; *R. R. v. Stroud, ib.,* 416; *Ewbank v. Turner,* 134 N. C., 81. The same rule and for the same reason should obtain on appeals from a justice of the peace. The case being in the Superior Court that court should be seized of jurisdiction as fully as if the case had originated there, and the judge should have power to make amendments and

to try the case even though the proceeding before the justice was a nullity. The decisions to the contrary can be corrected by overruling the erroneous precedents referred to. In the matter of appeals from the clerk to the judge the correction was made by statute, but it could have been made by the court itself overruling its former decisions. If it had been a matter of jurisdiction under the provisions of the Constitution it could not have been corrected by statute.

In this connection it may not be amiss to call attention to another inadvertence, into which former courts, whose judges were still under the influence of the former ideas as to procedure, have fallen in holding that a justice of the peace and the clerk have no jurisdiction in equity. The Constitution having abolished the distinction between law and equity, such distinction cannot survive in actions before a justice of the peace or a clerk or any other officer any more than in the Superior Courts. The abolition is broad and general, and applies to all courts. The ruling to the contrary was nothing more than the survival of preconceived opinions. It is true that neither a justice of the peace nor a clerk can issue an injunction or appoint a receiver. The Legislature has thought fit to restrict such powers to the judges of the Superior Court. That is a matter of practise resting in the discretion of the law-making power. But it is a very different matter to hold, by judicial enactment, that those officers have no jurisdiction where an equity is to be administered. The Constitution having abolished the distinction between law and equity there is no reason why equitable rights as well as equitable defenses should not be set up in proceedings before a justice of the peace or before the clerk, though the administration of an equitable remedy by an injunction or the appointment of a receiver is not conferred upon those officers. It has been held that a justice has jurisdiction of equitable defenses. *Levin v. Gladstein,* 142 N. C., 494. If so, he must have jurisdiction of equitable causes of action.

When by appeal such cases get into the Superior Court, the judge can and does issue an injunction and appoint receivers if found an appropriate remedy. The same rule should apply to

judgments upon a counterclaim, or a cause of action or defense set up by amendment in the Superior Court.

The case being in the Superior Court by virtue of the appeal, the parties should not be dismissed thence to re-enter the same court by service of summons in order to litigate identically the same matter.