O. F. WHITE v. THE FISHERIES PRODUCTS COMPANY.

(Filed 7 March, 1923.)

1. **Bills and Notes—Negotiable Instruments—Fraud—Evidence—Damages.**

Where the plaintiff has given his negotiable note payable to defendant corporation for shares of its stock, under agreement with defendant's agent procuring it that it would not be binding unless or until the plaintiff sold his farm, of which the plaintiff would notify the defendant, which was not done, and this note is acquired in due course by an innocent purchaser for value, without notice of the equities existing between the original parties; it is evidence sufficient, with the declaration of the agent obtaining the note made to another prior thereto, that he "was going out to tackle the plaintiff, and see if he could not put something over on him," to show that the defendant's agent obtained the note upon a fraudulent promise he had no intention of performing at the time he made it, and entitles the plaintiff to recover in his action for fraud and deceit against the original payee.

2. **Same—Written Instruments—Evidence.**

Where a negotiable instrument is void as having been obtained by fraud of the payee's agent, its further provision giving authority of the maker for its negotiation, and also reciting that he had received cash therefor, does not exclude, as between the original parties, parol evidence of the fraud in its inception, on the ground that it contradicted the written terms of the note.

APPEAL by defendant from *Horton, J.,* at November Term, 1922, of BERTIE.

The action is to recover damages for wrongfully negotiating by endorsement, and to a holder in due course certain notes of plaintiff in breach of defendant's agreement to hold same until a binding contract should have been made by the parties. (2) For false and fraudulent representations on part of defendant's agent in charge of the matter, by which plaintiff was induced to sign and deliver the notes in such form that defendant was enabled to negotiate the notes to a holder in due course to plaintiff's damage.

In either aspect of the matter there was denial of liability on part of defendant. On the trial there were facts in evidence tending to show that on 17 June, 1920, plaintiff signed and delivered to defendant's agent three promissory notes, aggregating $11,410, due 1 June, 1921, and on each note there appeared over plaintiff's signature an endorsement in terms as follows: "This is to certify that this note is given for a cash consideration, therefore it will be satisfactory to me for the holder to cash this note before it is due, and I will pay in full at maturity to the purchaser."

There was evidence on part of plaintiff to the effect that these notes were to be placed for safekeeping in the Bank of Colerain, and it was understood and agreed that if plaintiff sold a certain farm in Chowan County at a suggested price before the maturity of the notes, he would so inform defendant and take up the notes, paying principal and interest, and receive therefor 761 shares of stock in defendant company; and further, that should plaintiff fail to sell said farm as above stated, the notes were to be returned and all negotiations abandoned. That instead of depositing said notes in accordance with the above understanding and agreement, defendant's agent wrongfully and fraudulently, and with intent to cheat plaintiff, negotiated said notes to the Bank of Colerain, which became an innocent purchaser for value, and plaintiff was forced to pay said notes at maturity, though he had not been able to sell said farm as contemplated, and the contingency on which the notes were to take effect as between the original parties had not occurred. See statement of facts in former appeal, reported in 183 N. C., 228.

There was further evidence tending to show false and fraudulent statements and assurances of defendant's agent as to the value of the stock, and there were also allegations with supporting evidence on the part of plaintiff to the effect that at the time said notes were obtained defendant's agent had no purpose of abiding by the agreement made, but same was entered into with the fraudulent purpose and design to obtain the notes and at once sell and dispose of same, and thereby cheat and defraud plaintiff, which they did to his pecuniary damage.

Defendant maintained that the contract and agreement was fully shown on face of the written papers, and offered evidence tending to show that the stock was of real value, and that no imposition had been made on plaintiff.

On a former appeal in the cause, reported in 183 N. C., 228, plaintiff having obtained a judgment as for mere breach of the agreement not to presently negotiate the notes, the judgment was set aside and a new trial ordered on the ground that in that aspect of the matter it was not open to plaintiff, by parole evidence, to contradict the express written agreement appearing on the back of the notes. The opinion having been certified down, in deference thereto the case at the present trial was submitted to the jury on the issue of fraud, and verdict was rendered. as follows:

"1. Did the defendant fraudulently and wrongfully induce plaintiff to execute the notes, as alleged, and by such fraudulent means obtain possession of the same and fraudulently and wrongfully sell and dispose of same and convert the proceeds thereof to its own use, as alleged in the complaint? Answer: 'Yes.'

"2. If so, what damage has plaintiff sustained, and in what sum is defendant indebted to plaintiff by reason thereof? Answer: '$11,410, with interest from 1 June, 1920.'"

Judgment for plaintiff, and defendant excepted and appealed, assigning errors.

*Winston & Matthews and Gillam & Davenport for plaintiff.*
*O. H. Guion, and Rountree & Carr for defendant.*

HOKE, J. It is objected to the validity of this recovery: (1) That there is no sufficient evidence of actionable fraud avoiding the contract as it appears in the written instruments; (2) that the evidence offered and received is incompetent as being in contradiction of the written stipulations appearing on the back of the notes. But in our opinion neither position can be sustained.

As to the first objection, in a case at the last term of *Williams v. Hedgepeth,* 184 N. C., 116, it was said: "It is established by the great weight of authority, and is held for law in this jurisdiction, that where one under the guise of a purchase acquires the goods or property of another under a promise to pay or perform, and has at the time a settled purpose to do neither, such transaction will be regarded as a fraudulent one on the part of the pretended purchaser, and same may be set aside at the instance of the vendor. In Benjamin on Sales (7 ed.), at p. 470, the American Annotator states the position as follows: 'Another well established species of fraud by a vendee is purchasing with a positive

intention not to pay for the goods. If such intention were known to the vendor he certainly would not sell. Its suppression, therefore, is a legal fraud,' citing, among many other authorities, *Des Farges v. Pugh,* 93 N. C., 31; *Wallace v. Cohen,* 111 N. C., 103; *Donaldson v. Farwell,* 93 U. S., 631; *Stewart v. Emerson,* 52 N. H., 301, presenting an elaborate and learned opinion by *Associate Justice Doe; Watson v. Silsby,* 166 Mass., 57. And a subsequent case in this State of *Rudisill v. Whitener,* 146 N. C., 403, is an approval of the principle as stated. And in Bigelow on Fraud the author says: 'That according to the current of authority upon this subject, a debt is created by fraud, where one intending at the outset not to pay for property induces the owner to sell it to him on credit by falsely representing or causing the owner to believe that he intends to pay for it, or by concealing the intent not to pay.' "

The jury having accepted plaintiff's version of the occurrence, it appears that defendant company, through its agent, under an agreement not to negotiate the notes till notified of the sale of plaintiff's farm, and that same should not bind unless and until such sale was had, immediately, and in violation of the agreement, sold same by endorsement to the bank, thus conferring upon the bank full power to enforce collection from plaintiff as a holder in due course.

It further appears that on the day of the occurrence, and before going out to plaintiff's residence some miles in the country, this agent consulted with the cashier of the bank as to whether White's notes would be good for eight or ten thousand dollars, and whether the bank could handle the paper. And further said to the cashier that he was going out to tackle White and see if he couldn't put something over on him. And returned after dinner with the notes signed by White.

True, in the cases cited there had been an executed sale, but here the facts permit the inference that having the fraudulent purpose in his mind at the time, defendant's agent obtained the notes under the guise of a bona fide agreement not to negotiate, and the cause comes clearly within the principle stated, and the authorities are decisive against defendant's exception.

And on the second objection, that parole evidence tending to show fraud in the contract was excluded by the written stipulation appearing on the back of the notes; in *Miller v. Howell,* 184 N. C., 119, it was held, among other things: "Stipulations in a written contract made by an agent in behalf of his principal that exclude all evidence of agreements made by the agent that are not contained in the written contract are maintainable when the contract itself is valid and enforceable; but where the verbal representations of the agent are fraudulent, and affect the existence of the contract, they are admissible to set it aside in its entirety."

This was virtually held in the former appeal in the cause, 183 N. C., 228, and the position is in full accord with the authorities on the subject. *Machine Co. v. Bullock,* 161 N. C., 1; *Machine Co. v. McKay,* 161 N. C., 584; *Machine Co. v. Feezer,* 152 N. C., 516; *Hickly v. Oil and Pipe Line,* 132 Iowa, 396; *Garrison v. Machine Co.,* 159 N. C., 285; 10 R. C. L.; pp. 1058-1059. As said in *Feezer's case, supra:* "To hold the contrary would be to sanction the principle that the deeper the guilt the greater the immunity, and enable fraud by its own contrivance to so entrench itself that its position would in many instances be practically unassailable."

We find no reversible error in the record, and the judgment in plaintiff's favor is affirmed.

No error.