J. G. FOX and Wife, ELLA C. FOX v. SOUTHERN APPLIANCES, INC., and C. D. MITCHELL.

(Filed 28 April, 1965.)

**1. Evidence § 27—**

    All prior and contemporaneous negotiations will be presumed to be merged in the written contract, and evidence of such parol negotiations is incompetent to vary or contradict the terms of the writing.

FOX *v.* SOUTHERN APPLIANCES.

**2. Same;   Fraud § 10—**

Parol evidence to show that a written contract was procured by fraud is competent and does not come within the purview of the rule that parol evidence is not competent to vary or contradict the terms of a writing, since the evidence of fraud does not challenge the accuracy of the terms of the writing but the validity of the writing itself.

**3. Fraud § 10—Mere reference in a contract to source of information cannot preclude as a matter of law right to rely upon representation.**

Provisions in a contract for the sale of realty that the property was to be conveyed "subject to such conditions, reservations and restrictions as appear in the instruments constituting the chain of title", *held* not to preclude the contention that the seller's agent made a fraudulent representation that the only business restrictions binding on the property were zoning regulations of the municipality restricting its use to office and institutional use, since the contract does not specify what restrictions should apply but merely refers to the source from which information could be had as to what restrictions were applicable, and therefore the contract and the representation do not deal with precisely the same matter within the provisions of the parol evidence rule.

**4. Fraud § 5—**

Whether the purchaser of realty has the right to rely upon the representation of the seller's agent that the only business restrictions applicable to the property were municipal zoning regulations limiting it to office and institutional use, without investigating the chain of title which would disclose that the property was subject to residential restrictions, must be determined upon the facts upon the basis of whether the representation was of such character as to induce a person of ordinary prudence to rely thereon, and ordinarily the question may not be determined on demurrer prior to the introduction of evidence.

**5. Fraud § 8—**

Allegations that the purchaser desired to purchase property for business purposes, that the seller's agent knew or pretended to know what restrictions on the use of the property were applicable, and for the purpose of inducing the purchase, represented that the only restrictions were zoning regulations restricting use of the property to office and institutional purposes, and that the purchaser executed the contract of purchase in reliance upon such representation, which was material and false in fact, *held* sufficient to allege all the elements essential to constitute actionable fraud.

**6. Pleadings § 2—**

A pleading should allege the ultimate and not the evidentiary facts.

**7. Pleadings § 12—**

A demurrer admits for its purposes the truth of the facts well pleaded.

**8. Pleadings § 19—**

A pleading will be liberally construed upon demurrer, and where the facts pleaded include all of the essential elements of the purported cause of action, the courts are not permitted to draw inferences contrary thereto.

BOBBITT, J., concurring.

HIGGINS, J., dissenting.

RODMAN, J., dissenting.

APPEAL by defendant Southern Appliances, Inc., from *Patton, J.,* January 4, 1965, "D" Non-jury Session of MECKLENBURG.

Action for specific performance of contract for the purchase of land.

The complaint alleges: On 16 January 1964 plaintiff J. O. Fox and defendant C. D. Mitchell, as agent of corporate defendant, executed in writing a Contract of "Sale of Real Estate" reciting that "Mr. J. O. Fox has this day sold to Southern Appliances, Inc., . . . who has this day purchased that certain parcel of property known as house and lots 12 and 13, block 4, Shenandoah Park, Charlotte," at the price of $24,-500, terms cash; that "It is understood that the property will be conveyed subject to such conditions, reservations and restrictions as appear in instruments constituting the chain of title"; that seller agrees to execute and deliver deed "conveying an indefeasible fee simple title to the land . . . with full covenants and warranties"; and that the transaction is "to be closed 90 days from execution of sales contract." Defendants advised plaintiffs that they desired possession of the premises as early as possible. The premises were being used by plaintiffs as a residence. Plaintiffs vacated the property on 4 March 1964. Defendants refuse to comply with the contract, pay the purchase price and accept deed "because the property is subject to residential restrictions." Plaintiffs are ready, able and willing to make conveyance in accordance with the contract.

Corporate defendant answered, admitted the execution of the sales contract, and for "A Further Answer and Defense" alleged: Plaintiffs, through their exclusive sales agent, represented that the property "had no restrictions that would prohibit its use for business purposes except zoning restrictions of the City of Charlotte, North Carolina, which' restricted its use to office and institutional use." In fact, the property was subject to covenants appearing in the record title restricting it to residential purposes only. The representations were false and were "made with knowledge of their falsity, or recklessly without knowledge of their truth and as a positive assertion; were made with intention that they would be acted upon by this defendant in execution of the Contract of Sale of Real Estate . . . ; and this defendant has suffered damage thereby. The value of the property for residential purposes only is $12,500. This defendant has elected to rescind the contract.

Plaintiffs demurred to corporate defendant's Further Answer and Defense on the ground that the matters alleged therein "rest in parol and contradicts and varies from the terms of the written Contract of Sale

of Real Estate." The demurrer was sustained. Corporate defendant appeals.

*Ray Rankin for plaintiffs.*
*Ervin, Horack, Snepp & McCartha for defendants.*

MOORE, J. No verbal agreement between parties to a written contract, made before or at the time of the execution of such contract, is admissible to vary its terms or to contradict its provisions. *Insurance Co. v. Morehead,* 209 N.C. 174, 183 S.E. 606. It will be presumed that the writing merged therein all prior and contemporaneous negotiations. *Neal v. Marrone,* 239 N.C. 73, 79 S.E. 2d 239. But parol evidence is admissible to show that a written contract was procured by fraud, for the allegations of fraud challenge the validity of the contract itself, not the accuracy of its terms — the instrument itself, on the issue of fraud, is the subject of dispute. *Cotton Mills v. Manufacturing Co.,* 218 N.C. 560, 11 S.E. 2d 550; *Hardware Co. v. Kinion,* 191 N.C. 218, 131 S.E. 579; *Miller v. Howell,* 184 N.C. 119, 113 S.E. 621; *Machine Co. v. Bullock,* 161 N.C. 1., 76 S.E. 634; *Unitype Co. v. Ashcraft Bros.,* 155 N.C. 63, 71 S.E. 61. Fraud alleged as a defense to the enforcement of a written contract is not an attempt to vary or contradict the terms of the contract, for if the fraud be proven it nullifies the contract. *White v. Products Co.,* 185 N.C. 68, 116 S.E. 169; *Machine Co. v. McKay,* 161 N.C. 584, 77 S.E. 848; *Tyson v. Jones,* 150 N.C. 181, 63 S.E. 734. "It is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable — that is, the representations are usually not regarded as merged in the contract . . ." 23 Am. Jur., Fraud and Deceit, § 23, p. 775-6.

But plaintiffs stand on the proposition that "where the written instrument itself precludes the representation relied upon, an action on such alleged representations cannot be maintained." 2 Strong: N. C. Index, Fraud, § 10, p. 384; *Wilkins v. Finance Co.,* 237 N.C. 396, 75 S.E. 2d 118. They contend that the *precise* subject matter of the parol representation is dealt with in the written contract. The contract provides "that the property will be conveyed subject to such . . . restrictions as appear in instruments constituting the chain of title." Defendant alleges that it was represented that the property "had no restrictions that would prohibit its use for business purposes except zoning restrictions of the City . . . which restricted its use to office and institutional use." We do not agree that the contract deals with the *precise* matter involved in the representation. Both relate to restrictions, but the representation *expressly* relates to the extent of business

restriction, while the contract merely refers defendant to the source to which he may have resort for information as to what restrictions there are. "Referring a representee to the sources of the speaker's information does not necessarily relieve the representor from liability for false statements, since the representee's right to rely on such statements without an investigation of the sources of information mentioned is not necessarily destroyed by such reference. Whether the representee should have consulted the sources referred to depends on circumstances and is often held to be a question for the jury." 23 Am. Jur., Fraud and Deceit, § 158, p. 965. "It is generally held that fraud may be predicated on false representations or concealments, although the truth could have been ascertained by an examination of public records. As otherwise expressed, the general rule is that the mere fact that public records, if examined, would show the representee that representations of fact are false does not preclude his establishing fraud, because he is under no duty to make such examination. This principle is especially applicable where a representation is knowingly false and is made for the express purpose of deceiving and defrauding another who relies on it, where there is a duty of disclosure of information, where the party to whom the representations are made has no opportunity to examine the records, or where such investigation would not reveal the truth. In some of the older cases the scope of the rule has been limited, making its application depend on prudence. It has been held that to excuse an examination of the records, when accessible, the representation must be such as to induce the party to whom it is made to refrain from making such examination, and that the fact that such an examination would have disclosed the facts, although it does not necessarily destroy the right of reliance, is nevertheless entitled to its weight in determining whether the representations are such as would impose on a person of ordinary prudence." *Ibid,* § 163, pp. 972-974. The law with respect to misrepresentations of matters of public record is discussed in an exhaustive annotation in 33 A.L.R. 853-1161, entitled "Fraud — Matters of Public Record," in which cases from the various jurisdictions of the United States and England are listed and annotated.

A purchaser of property seeking redress on account of loss sustained by reliance upon a false representation of a material fact made by the seller may not be heard to complain if the parties were on equal terms and he had knowledge of the facts or means of information readily available and failed to make use of his knowledge or information, unless prevented by the seller. But the rule is also well established that one to whom a definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon.

The right to rely on representations is inseparably connected with the correlative problem of a duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest. *Calloway v. Wyatt,* 246 N.C. 129, 97 S.E. 2d 881; *Keith v. Wilder,* 241 N.C. 672, 86 S.E. 2d 444; *Pridgen v. Long,* 177 N.C. 189, 98 S.E. 451. For a case involving misrepresentations as to matters of record in the sale of land, see *Whitaker v. Wood,* 258 N.C. 524, 128 S.E. 2d 753, in which it was held that the question whether plaintiffs might reasonably rely on seller's representations was for the jury.

The legal policy in this jurisdiction with respect to the right of a representee to rely on representations made to induce entry into contractual relations has been long established and has been restated in a number of our recent cases. In addition to the opinion, delivered by Bobbitt, J., in *Whitaker v. Wood, supra,* we take note of those in *Johnson v. Owens,* 263 N.C. 754, 140 S.E. 2d 311, and *Cowart v. Honeycutt,* 257 N.C. 136, 125 S.E. 2d 382. In *Johnson,* plaintiff, a prospective purchaser of a house, inspected the house on three occasions. On each occasion there was a fire in the fireplace but the house was cold and the central heating system was not in operation. In response to plaintiff's inquiry, defendant-seller stated that the heating system was in excellent condition but was not operated in the daytime because of defendant's absence at work. The system was in fact so defective that plaintiff had to replace it. Defendant contended that plaintiff could not reasonably rely on the representation since she had full opportunity to inspect and test the system. We held that it was a question for the jury. Sharp, J., speaking for the Court, said: " 'The question is whether it is better to encourage negligence in the foolish or fraud in the deceitful.' . . . Just where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine. This case presents that difficulty. In close cases, however, we think that a seller who has intentionally made a false representation about something material, in order to induce a sale of his property, should not be permitted to say in effect, 'You ought not to have trusted me. If you had not been so gullible, ignorant or negligent, I could not have deceived you.' Courts should be very loath to deny an actually defrauded plaintiff relief on this ground."

*Cowart* involved a representation made in procuring the execution of a release. Plaintiff was injured in an automobile accident; she was operating her husband's car at the time. She signed a release upon the representation that it covered repairs to the car and medical expenses

incurred by her husband because of her injuries, but did not affect her claim for damages. She had had limited schooling but was not illiterate; she did not read the release, but relied on the representation — it proved to be false. We held that whether she should have read the release was a question for the jury. Parker, J., delivered the opinion and stated: "Defendant in his brief admits that there was evidence of a false representation of a material fact which was relied upon by plaintiff, but contends plaintiff as a matter of law was not justified in relying upon such representation, and her reliance was not reasonable. Such a contention is without merit. Our reply to such contention is this: 'In *Gray v. Jenkins*, 151 N.C. 80, 65 S.E. 644, this Court said: "The law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract; that there must be a reliance on the integrity of man or else trade and commerce could not prosper." ' *Roberson v. Williams*, 240 N.C. 696, 83 S.E. 2d 811."

In the instant case defendant's Further Answer and Defense alleges all of the factual elements essential to constitute actionable fraud. *Early v. Eley*, 243 N.C. 695, 91 S.E. 2d 919. It alleges in effect that defendant desired to purchase real estate usable for business purposes, plaintiffs' agent knew or pretended to know what restrictions were on the use of the property in question, defendant did not know, said agent as an inducement to the sale represented that the property was not restricted against use for office and institutional purposes, defendant executed the sales contract in reliance on the representation which was in fact false, and defendant was materially damaged as a result of the deception.

The case has not reached the trial stage. We are concerned only with the sufficiency of the pleading. One who tests a pleading by demurrer admits the truth of the facts pleaded, for the purposes of the demurrer. When the case comes to trial and the evidence is in, it may appear, under the circumstances, as a matter of law that defendant could not reasonably rely on the alleged representation, or, on the other hand, it may prove to be a question for the jury. We cannot at this stage determine what the evidence will be. A litigant is not required to allege evidentiary matters and, if he does, such matters will be stricken on motion. As stated by Higgins, J., in *Dowd v. Foundry Co.*, 263 N.C. 101, 139 S.E. 2d 10: ". . . the complaint must give . . . 'a plain and concise statement of the facts constituting a cause of action without unnecessary repetition . . .' The plaintiff should state the relief to which his allegations of fact entitle him. In a few simple words the pleadings should pinpoint the controversy and disclose the proper issues

for its determination. . . . embellishments and banjowork inserted for their effect on the jury" should be omitted. Defendant's pleadings are concise and sufficient ultimate facts are alleged to withstand plaintiff's demurrer. "Upon demurrer a pleading will be liberally construed with a view to substantial justice between the parties, giving the pleader the benefit of every reasonable intendment in his favor. And a demurrer will not be sustained unless the pleading is wholly insufficient or fatally defective." 3 Strong: N. C. Index, Pleadings, § 12, pp. 624-5. Where the facts pleaded include all the essential elements of the purported cause of action, we are not permitted to draw inferences contrary to the pleadings.

Reversed.


Bobbitt, J., concurring: The parol evidence rule does not apply when it is alleged and shown that the execution of a written instrument was procured by fraud. Stansbury, North Carolina Evidence, Second Edition, § 257. Here, defendant, on the ground of fraud, seeks to rescind the contract in its entirety.

Defendant, in its further answer and defense, alleges the reasonable market value of plaintiffs' property with its use restricted to "residential" purposes is only $12,500.00 instead of the contract price of $24,-500.00; that plaintiffs' agent represented to defendant that plaintiffs' property "had no restrictions that would prohibit its use for business purposes except zoning restrictions of the City of Charlotte, North Carolina, which restricted its use to office and institutional use," when in fact the use of plaintiffs' property is restricted to "residential" purposes only; that said false representations were made with knowledge of their falsity or recklessly without knowledge of their truth and as a positive assertion; that they were made with the intention that they would be relied upon by defendant; that they were in fact relied upon and acted upon by defendant in the execution of the contract; and that defendant has been damaged on account thereof.

Unquestionably, the elements of fraud are sufficiently alleged. The narrow question for decision is whether the fact that the written contract contains the words, "It is understood that the property will be conveyed subject to such conditions, reservations and restrictions as appear in instruments constituting the chain of title," is sufficient to establish *as a matter of law* that defendant could not *reasonably* rely on said false representations. In my view, whether defendant could and did *reasonably* rely on said false representations should not be determined until defendant has had opportunity to bring forward its evidence. Hence, I concur.

Higgins, J., dissenting: The parties entered into a written contract that plaintiffs would sell and the defendant would purchase a house and lots No. 12 and 13, in block 4, Shenandoah Park, Charlotte, for $24,500.00. The contract provided: "It is understood that the property will be conveyed subject to such conditions, reservations, and restrictions as appear in instruments constituting the chain of title . . ."

Upon the defendant's refusal to fulfill the contract, the plaintiffs brought suit for specific performance. The defendant, by answer, admitted the execution of the contract but by way of further defense alleged:

> "3. Plaintiffs, through their exclusive sales agent . . . represented . . . that plaintiffs' property 'had no restrictions that would prohibit its use for business purposes except zoning restrictions of the City of Charlotte, North Carolina, which restricted its use to office and institutional use,' when in fact by deed recorded in Book 1185, page 248 of the Mecklenburg Registry and by restrictive covenants recorded in Book 1198, page 495 of the Mecklenburg Registry, the use of plaintiffs' property is restricted to 'residential' purposes only."

The defendant alleged the representations were false and fraudulent, were intended to and did deceive the defendant to its damage.

The record does not indicate the parties contracted otherwise than on equal terms. Regardless of what either's real estate broker said, or thought, or remembers about restrictions (and lawyers often disagree about their meaning) the parties solemnly contracted in writing that the conveyance would be made *subject to such conditions, reservations, and restrictions as appear in the chain of title.* By this vital provision the parties agreed and determined by reference to the public records (which neither could change) exactly what conditions, reservations, and restrictions were embraced within their contract. The writing binds the parties to look to the public records and nowhere else for those conditions.

This decision, to which I cannot agree, strikes one of the fundamentals from contract law. It says that a written instrument may be contradicted by parol. If the further defense, which Judge Patton struck from the answer, is restored, the door is opened to defendant to show by parol evidence conditions, reservations, and restrictions other than those which are disclosed by the chain of title. The jury, according to which party's witnesses swear harder or louder, may make for the parties a contract different from that which they made for themselves.

Heretofore it seems to have been the law that when a contract has been reduced to writing and signed by the parties, their prior negotia-

tions become merged in the written instrument. That written agreement may not be varied, added to, taken from, or contradicted by parol evidence. "As against the recollection of the parties, whose memories may fail them, the written word abides." *Insurance Co. v. Morehead,* 209 N.C. 174, 183 S.E. 606.

The plaintiffs' contentions are that the contract speaks the truth. The defendant contends to the contrary. If its contention is correct, the written word neither abides very long nor with much force.

In order to prevent fraud, the law requires certain contracts — or some memorandum thereof — to be in writing and signed by the party to be charged. Contracts to sell land fall in this category. The purpose of reducing a contract to writing is to avoid any controversy over its terms. *Bank v. Slaughter,* 250 N.C. 355, 108 S.E. 2d 594. "It is a well settled rule of law that when parties have reduced their agreement to writing, parol evidence is not admissible to contradict it for the reason that the written memorial is the best evidence of what the parties have agreed to." *McLawhon v. Briley,* 234 N.C. 394, 67 S.E. 2d 285. I vote to affirm.

RODMAN, J., dissenting: I concur in the dissenting opinion of Higgins, J. I do not understand there is disagreement in the Court as to what must be established to rescind a contract on the ground of fraud. Our disagreement in this case relates to the application of the law to the facts as alleged and admitted by the demurrer.

The legal principle here controlling was aptly stated by Barnhill, J. in *Harding v. Insurance Co.,* 218 N.C. 129, 10 S.E. 2d 599. He said: "Representations concerning the value of real property or its condition and the adaptation to particular uses will not support an action in deceit unless the purchaser has been fraudulently induced to forbear inquiries which he would otherwise have made, and if fraud of this latter description is relied on as an additional ground of action, it must be specifically set forth in the declaration. *Parker v. Moulton,* 14 Mass. 99; 19 Am. Rep. 315. 'It is generally held that one has no right to rely on representations as to the condition, quality or character of property, or its adaptability to certain uses, where the parties stand on an equal footing and have equal means of knowing the truth. The contrary is true, however, where the parties have not equal knowledge and he to whom the representation is made has no opportunity to examine the property or by fraud is prevented from making an examination.' 12 R.C.L. 384. *When the parties deal at arms length and the purchaser has full opportunity to make inquiry but neglects to do so and the seller resorted to no artifice which was reasonably calculated to induce the purchaser to forego investigation action in deceit will not lie."*

Parker, J. reduced the rule to two terse sentences. He said: "The right to rely on representations is inseparably connected with the correlative problem of the duty of the representee to use diligence in respect of representations made to him. The policy of the courts is on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest." *Calloway v. Wyatt,* 246 N.C. 129, 97 S.E. 2d 881.

Here, defendant alleges plaintiff's agent represented that the property was not subject to restrictions prohibiting its use for business purposes. He impliedly asserts that he contracted to purchase with the intent to use for business purposes. When the contract was executed, defendant knew he was obligating himself to take the property subject to whatever restrictions appeared in plaintiff's record title. The objectionable restriction appears in plaintiff's record title. Defendant could have ascertained what restrictions appeared in plaintiff's title as easily as the purchaser in *Calloway v. Wyatt, supra,* could have ascertained about the inadequate water supply. In one case the truth could have been ascertained by turning on a water spigot, in the other, by looking at the recorded deeds constituting plaintiff's chain of title.

How simple it would have been to have required a statement in the contract that none of the restrictions would prohibit the use of the property for business purposes. Defendant's allegations that he *reasonably* relied on the statement of plaintiff's agent is not admitted by the demurrer, because it is, in my opinion, not a statement of fact, but on the admitted facts is an erroneous legal conclusion.