**Edwin G. MOORE, II and Maribelle R. Moore, Appellants,**

v.

**Mary Q. MIDGETTE (as Personal Representative of Elizabeth Q. Parkerson, Deceased) et al., Appellees.**

**Edwin G. MOORE, II and Maribelle R. Moore, Appellees,**

v.

**CONTINENTAL INSURANCE CO. et al., (two cases), Appellants.**

Nos. 10806–10808.

United States Court of Appeals Fourth Circuit.

Argued Jan. 13, 1967.

Decided March 23, 1967.

Charles C. Shaw, Jr., Elizabeth City, N. C. (George Eric Rosden, Washington, D. C., and Leroy, Wells, Shaw & Hornthal, Elizabeth City, N. C., on brief), for Edwin G. Moore and Maribelle R. Moore.

John H. Hall, Elizabeth City, N. C. (Forrest V. Dunstan, Elizabeth City, N. C., on brief), for appellees Midgette and Kellogg.

J. Kenyon Wilson, Jr., Elizabeth City, N. C., for the insurance companies.

Before HAYNSWORTH, Chief Judge, and BELL and WINTER, Circuit Judges.

WINTER, Circuit Judge.

Edwin G. Moore, II and Maribelle R. Moore, his wife, plaintiffs in the court below, appeal from a decree denying rescission of a contract of purchase and sale for certain hotel properties located at Nags Head, Dare County, North Carolina. The suit they instituted was filed against Elizabeth Q. Parkerson, the seller of the hotel properties, and Martin Kellogg, Trustee under a purchase money deed of trust, to secure a note given for the payment of the unpaid portion of the purchase price.[1]

On April 25, 1961, after the sale but prior to the commencement of suit, substantial fire damage to the hotel properties occurred. The various insurers refused to pay the claims of Mr. and Mrs. Moore,[2] but after Mrs. Parkerson instituted litigation in a state court they paid her the sum of $15,397.31, taking therefor a partial assignment of the note given for the balance of the unpaid purchase price. In due course, the insurers were permitted to intervene in the instant case as additional parties defendant to protect their interests. Because in the final order denying rescission, the district judge ordered and adjudged that " * * * the additional defendants take nothing by this action and go without day," the insurers also appeal, fearful that this order may adversely affect the validity of their assignment. We affirm the district court as to its denial of rescission and direct it to modify its final order to provide that the same shall in no manner constitute an adjudication of the rights of the insurers against the plaintiffs.

Mrs. Parkerson and her late husband successfully operated the Parkerson Hotel at Nags Head from 1936 to 1944. Mr. Parkerson died in 1944, and Mrs. Parkerson successfully operated the hotel through the tourist season of 1959. Prior to 1960, plaintiffs were guests at the hotel and became acquainted with both the hotel property and Mrs. Parkerson.

In 1954, Mrs. Parkerson had the first of a series of heart attacks. By the end of the 1959 season, she seriously considered selling the hotel. Plaintiffs, who were guests during the season, learned of this and indicated an interest in purchasing the property should Mrs. Parkerson reach a definite conclusion to sell. Mrs. Parkerson reached such a decision, upon the advice of her physician, early in January, 1960 and, on January 28, 1960, she wrote plaintiffs advising them of her intention, as they had requested her to do. In February, plaintiffs replied by letter acknowledging their interest in purchasing the property and posing many questions about income, expenses, and related financial matters.

Before answering this letter, Mrs. Parkerson, who had only a seventh grade education, communicated with her bookkeeper, a post office employee who did "a little accounting work," kept her income tax records, prepared her tax returns, and advised her on financial matters. He advised her to sell the property for $60,000.00 but, for tax reasons, not to take an initial down payment of more than $18,000.00, with an installment note for the remaining $42,000.00, secured by a purchase money deed of trust.

On February 15, 1960, Mrs. Parkerson responded to the plaintiffs' inquiries in a sixteen page handwritten letter. She attempted to describe the lots and improvements thereon of the hotel property in detail, and she also discussed various financial matters. Included in the letter was the statement, "Income was $40, thousand and some

---

1. Elizabeth Q. Parkerson died after suit was instituted and Mary Q. Midgette, her personal representative, was substituted in her place and stead. Mrs. Parkerson's deposition had been taken prior to her death and she testified, by deposition, in the proceedings.

2. We were told in oral argument that criminal proceedings pending against Mr. Moore for his alleged complicity in the fire are still unresolved. His original conviction for arson and attempted arson was reversed and he was awarded a new trial. State v. Moore, II, 262 N.C. 431, 137 S.E.2d 812 (1964).

over. Total expenses, $21, thousand * * *." It is the statement about income which plaintiffs contend misled them into purchasing the property [3], because the proof established that Mrs. Parkerson's 1959 federal income tax return disclosed that receipts were $28,234.91 and expenses (including depreciation of $1,816.75) were $24,627.35, leaving net taxable income of $3,607.56. On appeal, there is no substantial dispute but that revenues for 1959 did not exceed those shown on the tax return.[4]

On approximately March 11, 1960, Mr. Moore and a companion, Mr. John O'Donnell (who was then a law student and is now an attorney), came to inspect the hotel properties and, during this inspection, they took photographs. Mr. O'Donnell drew up an option to purchase the property at $60,000.00, exercisable until April 25, 1960, and this was signed by Mrs. Parkerson and Mr. Moore, the latter paying $200.00 in consideration thereof. For approximately two months following, there ensued telephone conversations between the plaintiffs and Mrs. Parkerson and another visit by Messrs. Moore and O'Donnell. There was evidence that on both of the occasions of Mr. Moore's visits with Mr. O'Donnell, Mrs. Parkerson's books of account were placed at the disposal of Mr. Moore and Mr. O'Donnell and they examined them. On or about May 14, 1960, Mr. Moore returned to the hotel with an attorney from Greenville, North Carolina. The option was exercised, by a partial payment of $18,000.00; final settlement, however, did not occur until July 8, 1960. As part of the overall purchase, Mrs. Parkerson entered into an employment contract with the plaintiffs. However, she did not complete performance of the contract because she had another heart attack during the summer of 1960.[5]

This suit for rescission was not filed until September 6, 1962, because, plaintiffs testified, they first learned in January, 1962, as a result of the taking of a deposition in the other litigation between them and Mrs. Parkerson that the statement in Mrs. Parkerson's letter might have been false.

The district judge found that Mrs. Parkerson lacked any intent to deceive, and that the plaintiffs were not deceived by Mrs. Parkerson's false statement about gross revenues from operation of the hotel properties in 1959. Upon his conclusion that, under North Carolina law, the absence of either of these elements was fatal to a case of actionable fraud, he denied rescission.

The law of North Carolina is settled as to what constitutes actionable fraud. Extensive examination of the authorities is not necessary, because they clearly show that for fraud arising from

---

3. In their complaint, plaintiffs alleged other misrepresentations about the state of repair of the structures, equipment and water system. The district judge in his opinion noted that Mrs. Parkerson insisted that the statements relating to structural conditions were essentially correct, but made no specific finding in regard thereto. The record showed plaintiffs were guests at the hotel many times and had made several detailed inspections of the properties after February 15, 1960. These alleged grounds of rescission were not pressed in oral argument or on brief before us. We deem them abandoned on appeal.

4. There is in the record, however, a summarization of the books made in August, 1960 which shows revenues of $41,174.91 and expenses (including depreciation) of $24,541.40. The books were not produced at the trial, because they were destroyed in a hurricane which occurred in March, 1962.

5. Mrs. Parkerson asserted a breach of the contract in other litigation between the parties. The note for the unpaid balance of the purchase price bore interest payable annually on September 6. When the 1960 interest was not paid, Mrs. Parkerson accelerated maturity of the note and began foreclosure of the deed of trust. Plaintiffs sought and obtained an order to enjoin foreclosure. Moore v. Parkerson, 255 N.C. 342, 121 S.E.2d 533 (1961). As part of this litigation plaintiffs prayed an accounting for moneys collected by Mrs. Parkerson and allegedly wrongfully withheld. Mrs. Parkerson counterclaimed for the compensation due her under the contract and moneys she advanced for the operation of the hotel.

an express representation to be actionable five elements must coalesce. There must be: (1) a false representation, (2) the declarant must know the falsity of his statement, or make it with such reckless disregard for the truth that the law will supply scienter, (3) the declarant must make the false representation with intent to deceive, or, as sometimes stated, with intent that it be acted on, (4) that which is misrepresented must be relied on and in fact deceive, and (5) the person to whom the misrepresentation is made must be injured. Fox v. Southern Appliances, Inc., 264 N.C. 267, 141 S.E.2d 522 (1965); Johnson v. Owens, 263 N.C. 754, 140 S.E.2d 311 (1965); Cowart v. Honeycutt, 257 N.C. 136, 125 S.E.2d 382 (1962); Calloway v. Wyatt, 246 N.C. 129, 97 S.E.2d 881 (1964); Earley v. Eley, 243 N.C. 695, 91 S.E.2d 919 (1956); Keith v. Wilder, 241 N.C. 672, 86 S.E.2d 444 (1955), and earlier authorities cited therein.

■■■ Our authority to review findings of fact by a district judge in a trial without the intervention of a jury is limited to a determination of whether they are "clearly erroneous," Rule 52(a) Fed.R.Civ.P. Our examination of the record satisfies us that there was sufficient evidence from which the district judge could properly conclude that Mrs. Parkerson lacked any actual or specific intent to deceive the plaintiffs. The evidence relating to this factor is in part conflicting, but, as we have often repeated, questions of credibility are for the trial judge and not us. However, we do conclude that Mrs. Parkerson intended plaintiffs to rely on her representation.

Supportive of the finding of lack of specific intent to deceive, the record discloses that Mrs. Parkerson was almost seventy years old, in ill health, and had only a seventh grade education at the time of the transaction of which Mr. and Mrs. Moore complain. She was unversed in the financial aspects of her business operation and depended for record keeping, preparation of income tax returns and financial advice on a bookkeeper who did not have substantially greater training than she. Thus made credible was her explanation that when she contracted to sell the hotel properties she took counsel with the bookkeeper who was her financial adviser; and in responding to the inquiry of the plaintiffs about the financial operations of the hotel and saying gross revenues were "$40, thousand some over," she erroneously stated the portion of the purchase price that the bookkeeper told her should be deferred for tax purposes. That this was a mistake, innocently made, was corroborated by the evidence that plaintiffs were given full access to the properties and her records. Mr. Moore, indeed, admitted that he was never prevented by Mrs. Parkerson from seeing whatever records he wished to examine prior to his making the initial payment of $18,000.00.

■■■ North Carolina law, however, does not limit intent to deceive to an actual or specific intent to commit a civil wrong. As stated in Calloway v. Wyatt, supra:

"We have many cases setting forth the essential elements of actionable fraud. *One of these elements is that the defendant made the false representation with intention that it should be acted upon by plaintiff, or as otherwise phrased, with intent to deceive.* (citing)" (emphasis supplied) 97 S.E.2d, at p. 884.

We conclude, therefore, that Mrs. Parkerson did have an intent to deceive, within the meaning of the North Carolina cases, because of the circumstances in which the statement was made. To plaintiffs, who had evidenced interest in a purchase of the property, Mrs. Parkerson communicated her intention to sell. She made the statement admittedly false in response to specific inquiry from plaintiffs who had evidenced interest in purchasing. We can only conclude that Mrs. Parkerson's intent in writing the letter in which the statement was contained was to further the sale, i. e., that plaintiffs act on it. In this regard, the finding of the district judge was clearly erroneous.

The district judge's finding, however, that the plaintiffs were not deceived was a permissible one under the evidence, especially when we afford to the district judge his function to determine the credibility of witnesses. It was not clearly erroneous and hence is dispositive of the appeal.

While North Carolina law requires as an essential element of actionable fraud that the misrepresented fact must be relied on and in fact deceive, North Carolina law does not countenance totally blind reliance by a prospective purchaser on what is said to him. North Carolina decisions fully recognize the conflicting policy consideration raised by the desire to suppress fraud by a seller, on the one hand, and the discouragement of negligence and inattention to one's own business interest by a buyer, on the other, and attempt to balance them in appropriate cases. In the latest expression of the Supreme Court of North Carolina, Fox v. Southern Appliances, Inc., supra, it is said:

"A purchaser of property seeking redress on account of loss sustained by reliance upon a false representation of a material fact made by the seller *may not be heard to complain if the parties were on equal terms and he had knowledge of the facts or means of information readily available and failed to make use of his knowledge or information, unless prevented by the seller.* But the rule is also well established that one to whom a definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon. The right to rely on representations is inseparably connected with the correlative problem of a duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest." (emphasis supplied) Id., 141 S.E.2d, at p. 526.

As the *Johnson* case, Fox v. Southern Appliances, Inc., supra, and Cowart v. Honeycutt, supra, hold, a question of whether a buyer was reasonable in his reliance is primarily a question for the trier of the fact.

The record shows that at the time of the transaction complained of the parties were at least on equal terms. Mrs. Parkerson was almost seventy years old and in ill health. In the very letter containing the fraudulent statement, she wrote, "If I had the education that one of you have, I would be a lot better off, I never finished the seventh grade, but my Mother taught me to work. I do not type, I only Keep my books, my way of doing the job. And have a Book Keeper to do all my tax etc. every month and at end of season." By contrast, Mr. Moore was forty-five years old, a college graduate and held a responsible position with the Central Intelligence Agency, while Mrs. Moore for seven years had been the confidential and special assistant to the then Administrator of the Small Business Administration. At a later date, Mrs. Moore became the Administrative Assistant to a member of the House of Representatives.

There was evidence, although conflicting, that the plaintiffs had full access to the records in the hands of Mrs. Parkerson's bookkeeper and examined them twice after the inaccurate statement and before the $18,000.00 payment was made, although all testimony is in accord that there was at most only a cursory inspection. Certainly, Mrs. Parkerson's letter can be considered as raising a strong inference that she neither kept nor knew accurate figures, and in her letter she claimed no better source of information than her own questionable knowledge. As has been previously stated, Mr. Moore admitted that he was never prevented by Mrs. Parkerson from seeing whatever records he wished to examine prior to his making the initial payment of $18,000.00. The district judge, thus, had an evidentiary basis for finding that plaintiffs had

the means of determining the accuracy of the statement and failed to employ it.

Plaintiffs' culpability for only cursory inspection was made more manifest by two other facts which appear from the evidence. Mrs. Parkerson in making the statement which the plaintiffs say they relied on, and which misled them, fully disclosed her insubstantial education, and that she kept her books "my own way of doing the job" and had a bookkeeper to do her tax returns. Coupled with this red flag as to probable accuracy of her representation, Mrs. Parkerson purportedly offered plaintiffs an investment of $60,000.00 on which they could expect an annual net taxable return (after depreciation) of 33⅓%. Such a high return to reasonably prudent people, not lacking in experience in the field of business, should have seemed highly suspect and gave rise to a correlative duty to make close and careful inspection of supporting proof. Cursory inspection, for whatever reason assigned, under such circumstances, could have been considered strong evidence of negligence and inattention to plaintiffs' own interests.

Another factor not to be overlooked is the length of time which elapsed between settlement by the plaintiffs and the beginning of operations by them, and the time they filed suit. Suit was not barred by limitations or by laches, yet the evidence discloses that the plaintiffs operated the hotel for all of 1960, had the original books and records of operations for 1960 to July 11 physically delivered to them in August, 1960, but did not seek to avoid the contract until September, 1962. In the meantime, the properties were partially destroyed by fire in the spring of 1961 and wrecked by hurricane in March, 1962. Notwithstanding that they knew the partial results of operations in 1960 by August and complete results for 1960 thereafter, they claim they were not aware of the potential falsity of the representation made to them by Mrs. Parkerson until January, 1962. Such conduct could properly have been considered by the district judge as indicative that plaintiffs, because of subsequent events other than the inaccurate statement, concluded that they had made a bad, but not fraudulent, bargain and wished to avoid it. Cf. Johnson v. Owens, supra, 140 S.E.2d, at p. 314.

In summary, therefore, we conclude that the finding of the district judge that plaintiffs may not be heard to claim that they were deceived is unassailable and since this essential element of actionable fraud was lacking plaintiffs are not entitled to rescission.

In the posture of the case in which the district judge entered a final order containing the language which concerns the insurers, we think that their rights under the partial assignment of the note have been neither adjudicated nor jeopardized. To assuage any doubt, we will remand their appeals for modification of the order to state that it does not adjudicate, nor is it in prejudice of, any of the rights of any assignee under the partial assignment of the note.

No. 10,806—Affirmed. Nos. 10,807 and 10,808—Remanded for Modification.